HB89CHOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        17 CR 667 (GHW)

BENJAMIN CHOW,

        Defendant.

------------------------------x

                        New York, N.Y.
                        November 8, 2017
                        11:37 a.m.

Before:

               HON. GREGORY H. WOODS

                        District Judge

                APPEARANCES

JOON H. KIM
    Acting United States Attorney for the
    Southern District of New York
ELISHA KOBRE
AMANDA KRAMER
    Assistant United States Attorneys

MILBANK TWEED
    Attorneys for Defendant
GEORGE CANELLOS
KATHERINE GOLDSTEIN
ADAM FEE

HB89CHOC

1              (In open court; case called)

2              MR. KOBRE:  Good afternoon, your Honor.

3              Elisha Kobre and Amanda Kramer for the government.

4              THE COURT:  Thank you very much.

5              MS. KRAMER:  Good morning, your Honor.

6              MR. CANELLOS:  Good afternoon, your Honor.  George

7     Canellos along with Katherine Goldstein and Adam Fee from

8     Milbank Tweed for defendant Ben Chow.

9              THE COURT:  Good.  Thank you very much.  Good morning.

10    Thank you for being here.

11             So, let's proceed.  Mr. Chow, you've been named in a

12    14-count indictment which is numbered 17 CR 667.

13             You can remain seated until I ask you to stand.  Thank

14    you very much, Mr. Chow.

15             Mr. Chow, you've been named in a 14-count indictment

16    which is numbered 17 CR 667.  The case has been assigned to me.

17    The purpose of this proceeding is to do a number of things.

18    First, to make sure that you have a copy of the indictment;

19    second, to inform you of the charges against you; third, to

20    take your plea; fourth to discuss what's going to happen next

21    in this case has a whole.

22             Now, Mr. Chow, I understand that you've already had an

23    initial appearance before a magistrate judge who has informed

24    you of certain of your rights.  Because of the importance of

25    your right to remain silent, I'm going to review that right for

HB89CHOC

1    you here now.

2            Mr. Chow, you have the right to remain silent.  You do

3    not have to say anything to anyone.  If you give up that right

4    and make a statement, the prosecutor can use everything that

5    you say against you.  Therefore, I strongly suggest that you

6    not say anything to anyone unless you and your counsel decide

7    that it is in your best interests to do so.  If you've already

8    given a statement, you don't have to say anything else.  If you

9    decide to go ahead and make a statement, you have the right to

10   stop at any time.

11           Do you understand your right to remain silent?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Thank you very much.

14           Good.  So I understand that Mr. Fee, Mr. Canellos, and

15   Ms. Goldstein are representing you in these proceedings; is

16   that correct?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  Thank you.

19           Now I'm going to ask you a couple of questions now if

20   I can.  If you don't understand any of these, Mr. Chow, or if

21   you want to consult with your lawyer at any time for any

22   reason, please just let me know and I will give you any time

23   that you wish to confer.

24           So, Mr. Chow, can you tell me your full name.

25           THE DEFENDANT:  Benjamin Bin Chow.

HB89CHOC

1              THE COURT:  Thank you.

2              Mr. Chow, are you a United States citizen?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Thank you.

5              Mr. Chow, do you understand what's happening in this

6    proceeding?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Thank you.

9              Mr. Chow, have you seen a copy of the indictment in

10   this case?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  Thank you.

13             Counsel have you had the opportunity to review the

14   indictment and to discuss it with Mr. Chow?

15             MR. CANELLOS:  Yes, we have, very extensively your

16   Honor.

17             THE COURT:  Can I turn to the United States, please.

18   Would one of you please summarize the charges on which the

19   defendant is being arraigned today.

20             MR. KOBRE:  Yes, your Honor.  There are 14 counts.

21             THE COURT:  I'm sorry could I ask you to stand,

22   please, counsel.

23             MR. KOBRE:  I'm sorry, your Honor.  I use a

24   wheelchair.

25             THE COURT:  I'm sorry.  I didn't see that.

HB89CHOC

1              MR. KOBRE:  That's okay.  And your Honor is not the

2      first one that that's happened with, so.

3              Your Honor the indictment contains 14 counts.

4              Count One is conspiracy to commit securities fraud.

5              Counts Two through Thirteen are counts of security

6      fraud under Title 15.

7              And the final count is a count of securities fraud

8      under Title 18.

9              The charges in the indictment arise from an insider's

10     trading scheme conducted by the defendant together with a

11     coconspirator relating to a merger or acquisition event with a

12     public company by the name of Lattice.

13             And the indictment essentially alleges that the

14     defendant provided material nonpublic information to a friend

15     and associate of his regarding that merger acquisition prior to

16     it being publicly announced.

17             The defendant was governed by non-- various

18     nondisclosure agreements which made clear that information

19     about the proposed negotiations with respect to the merger and

20     acquisition were to be kept confidential.  Those agreements

21     were between the -- were signed by the defendant in his

22     capacity as the managing partner and director of two private

23     equity funds that were the ones negotiating to purchase the

24     public company Lattice, and that is what the charges in the

25     indictment arise from.

HB89CHOC

1          THE COURT:  Thank you.

2          Mr. Chow, you have the right for me to read the

3   indictment to you out loud here on the record and I'd be happy

4   to do that.  You can also waive that right.

5          Would you like for me to read the indictment to you on

6   the record?

7          THE DEFENDANT:  I would like to waive that right, your

8   Honor.

9          THE COURT:  Counsel, do you waive formal reading of

10  the indictment?

11         MR. CANELLOS:  Yes, your Honor.

12         THE COURT:  Counsel and Mr. Chow, can I ask you to

13  please stand.

14         Mr. Chow, do you understand what it is that you have

15  been charged with?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Thank you.

18         Count One charges that from at least in or about

19  March 2016 through in about -- in or about November 2016, in

20  the Southern District of New York and elsewhere, you and

21  others, known and unknown, willfully and knowingly did combine,

22  conspire, confederate and agree together and with each other to

23  commit offenses against the United States, to wit, securities

24  fraud in violation of Title 18 U.S.C. Section 371.

25         How do you plead to this count?

HB89CHOC

1          THE DEFENDANT:  Not guilty, your Honor.

2          THE COURT:  Thank you.

3          I'm going to address each of Counts Two through

4   Thirteen collectively.  Each of Counts Two Through Thirteen

5   charge that from at least in or about July 2016 through in or

6   about November 2016, in the Southern District of New York and

7   elsewhere, you willfully and knowingly, directly and

8   indirectly, by the use of means and instrumentalities of

9   interstate commerce and of the mails and of facilities of

10   national securities exchanges, used and employed in connection

11   with the purchase and sale of securities manipulative and

12   deceptive devices and contrivances in violation of Title 16

13   U.S.C. Section 78j(b) and 78ff; Title 17 C.F.R. Sections

14   240.10b-5 and 240.10b-5-2 and Title 18 U.S.C Section 2.  Each

15   of those counts refers to a specific identified transaction set

16   forth in page fifteen of the indictment.

17          Mr. Chow, can I ask you:  How do you plead to each of

18   Counts Two through and including Thirteen?

19          THE DEFENDANT:  Not guilty, your Honor.

20          THE COURT:  Thank you.

21          Count 14 charges from at least in or about July 2016

22   through in or about November 2016, in the Southern District of

23   New York and elsewhere, you knowingly and intentionally

24   executed a scheme and artifice to:

25          A.  Defraud persons in connection with securities

HB89CHOC

registered under Section 12 of the Securities Exchange Act of
1934 and that were required to file reports under Section 15(d)
of the Securities Exchange Act; and.

B.  Obtained by means of false and fraudulent
pretenses, representations, and promises money and property in
connection with the purchase and sale of securities of an
issuer with a class of securities registered under Section 12
of the Securities Exchange Act of 1934 and that were required
to file reports under Section 15(d) of the Securities Exchange
Act of 1934, all in violation of Title 18 U.S.C. Sections 1348
and 2.

How do you plead to this count?

THE DEFENDANT:  Not guilty, your Honor.

THE COURT:  Thank you.

Mr. Chow, your pleas of not guilty are accepted.
Thank you very much.  You can be seated.  Thank you.

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  So can I turn to the United States.  You
described something about the nature of the case to me in your
overview regarding the indictment.  What else can you tell me
about the nature of the case?

MR. KOBRE:  Yes, your Honor.  So, again, the defendant
was managing director and managing partner of two private
equity firms.  One of them is called -- was called China Reform
Fund.  That was initially the defendant was a managing director

HB89CHOC

1    of that private equity fund.  And then subsequently he became a

2    managing partner and cofounder of a different private equity

3    fund known as Canyon Bridge Capital Partners.  Both of those

4    entities, first China Reform Fund and subsequently Canyon

5    Bridge, began negotiating with Lattice Semiconductor

6    Corporation to purchase Lattice Semiconductor Corporation to

7    acquire it and our understanding is to take it private.

8             And in that context the defendant came into possession

9    of material nonpublic information, including the fact that

10   those two private equity funds were, in fact, negotiating to

11   purchase Lattice as well as details about the negotiations and

12   how they were going, price terms and other details.  And though

13   the defendant signed as, first as managing director of China

14   Reform Fund and then subsequently as managing partner of Canyon

15   Bridge, nondisclosure agreements which specifically said that

16   the fact of the exploration or of a potential merger or

17   acquisition would be confidential, would be proprietary

18   information, and could not be disclosed except under very

19   limited circumstances which in the government's view do not

20   apply.  And, nonetheless, the defendant disclosed information

21   about the negotiations, about the fact of the negotiations

22   between his private equity firms and Lattice to a friend and

23   business associate who is described in the indictment as CC1.

24   And that is essentially the charge -- where the charges arise

25   from.

HB89CHOC

1          THE COURT:  Thank you.

2          At this time, counsel, do you anticipate filing any

3     superseding indictments adding defendants or additional

4     charges?

5          MR. KOBRE:  We do not, your Honor.

6          THE COURT:  Thank you.

7          So can you tell me, counsel, what the nature is of the

8     discovery that you anticipate producing to defendant and your

9     anticipated timeframe in which you'll produce it?

10          MR. KOBRE:  Yes, your Honor.

11          So, generally speaking, the discovery in this case

12     will consist of the following.  It will consist of data from

13     the phone of CC1.  That phone was seized pursuant to a search

14     warrant and contains information including the messages, text

15     messages and voice messages that are described in the criminal

16     complaint in this case.  And the government is going to be

17     producing a fair amount of data from that phone.

18          The government is also going to produce, of course,

19     the warrant that relates to the seizure and the search of that

20     phone as well as electronic devices that were seized from the

21     defendant upon his arrest.  Those devices, your Honor -- and

22     there are several of them -- have, all but one, have been

23     returned to the defendant, the devices themselves.  I've had a

24     conversation with defense counsel who have asked that the

25     government provide the images that are in the government's

HB89CHOC

1    possession.  So we would image those electronic devices, return

2    them, all but one.  Defense has asked for the images.  We're

3    going to provide that once defense gives us a hard drive to

4    enable us to do that.  And we'll obviously provide the warrant,

5    the search warrant that the government obtained to allow the

6    search of those devices as well.

7        And then, your Honor, there are records that relate to

8    the case, brokerage records relating to the trading done by

9    CC1, records that the government has obtained from the SEC

10   concerning those -- that trading activity, as well as records

11   from some of the entities that are involved here; so records

12   from Canyon Bridge, records from Lattice, and other subpoena

13   returns in the nature of bank records or records of electronic

14   accounts maintained by the defendant.  That's sort of a summary

15   of what we expect the discovery to be.

16       Your Honor, we propose that the bulk of the discovery,

17   basically everything that's in our possession now, that the

18   government will produce that by a week from this Friday.

19       And, your Honor, I say that to be conservative.  But

20   just to ensure that we can make sure that we have everything

21   and produce it in a clear way, clear and an organized way for

22   the defense, we would produce those materials a week from this

23   Friday with two -- the two qualifications, your Honor, that we

24   would add to that is:  First, with respect to Mr. -- the images

25   that I mentioned before, Mr. Chow's electronics, that could

HB89CHOC

 1    take a few additional days to burn.  Apparently, it's a lot of

 2    material.  There's a lot of data.  As soon as we get -- defense

 3    counsel has asked me for what size of a hard drive to -- we

 4    need in order to get that material to them.  We're to let them

 5    know that today or tomorrow at the latest.  They get us the

 6    hard drive and we'll facilitate that.  But that may extend a

 7    bit beyond the end of Friday, just in terms of whether it will

 8    actually take that long for the material to burn.

 9         And then the second sort of qualification is, your

10    Honor, there are outstanding subpoena requests for records in

11    this case.  And so those items are not in the government's

12    possession at this point.  We're pressing for the records -- to

13    get the records as soon as possible but -- and we obviously

14    will just turn them over as soon as we get them in or are able

15    to make sure that they are proper Rule 16 discovery or

16    otherwise appropriate discovery.  But we just don't have those.

17    And that may extend beyond the proposed discovery deadline.

18         THE COURT:  Thank you very much.

19         Have you discussed those proposals with counsel for

20    defendant?

21         MR. KOBRE:  Your Honor, we have had discussions and

22    I've let defense counsel know that that's sort of our general

23    plan.  I would also just inform your Honor that we've also sent

24    over to defense counsel a proposed protective order since some

25    of the evidence in this case will include personal identifying

HB89CHOC

1    information of individuals.  And we sent that over to defense

2    counsel yesterday.  I think defense counsel may have some

3    proposed edits to it.  And then hopefully we'll be able to

4    reach an agreement on that and submit it for your Honor to

5    enter that order.

6            THE COURT:  Thank you very much.

7            Given that description of the scope of discovery, I'd

8    like to turn to counsel for Mr. Chow to ask how long you think

9    you will need in order to review the materials.

10           MR. CANELLOS:  Your Honor, if the bulk of discovery

11   comes to us next week, I think we could review it very

12   expeditiously.  There's a little bit of a challenge in

13   anticipating how much time it will take because it's electronic

14   and it's very small but very small devices can have a lot of

15   information.  But I think we have a general sense of what kind

16   of information we're going to receive.  We're poised to review

17   it very quickly.

18           THE COURT:  Good.  Thank you.

19           So first, I'm going to ask United States to complete

20   the production as it described by November 17.  I appreciate

21   the two caveats described by you, namely with respect to the

22   burning of the image to devices and the fact that additional

23   information may come to the government's possession as a result

24   of these pending subpoena requests.

25           What's the parties' views regarding the appropriate

HB89CHOC

 1     next steps in the case?

 2              I understand defendant's counsel will be prepared to

 3     review these materials expeditiously.  What's your view

 4     regarding the appropriate next step for us?

 5              MR. CANELLOS:  Would you like us to start, your Honor?

 6              THE COURT:  Please.

 7              MR. CANELLOS:  Sure.  So the defendant was arrested

 8     here on a complaint that was under seal several weeks ago.  We

 9     have had a lot of discussions with the government about this

10     case preindictment.  So I think more so than most cases we sort

11     of all know where we're going.  We know there's not going to be

12     a disposition of the case.  We think there are very, very

13     significant legal issues here pertaining to what the defendant

14     was lawfully at liberty to share pertaining to the personal

15     benefit test, which has been a controversial issue in this

16     circuit since the Newman decision, more recently the Salman

17     decision, in the Supreme Court, and very recently the Martoma

18     decision.  This case presents a lot of legal issues under those

19     cases, also under the intent-to-benefit requirement with

20     insider trading.

21              But most of these legal issues, we think, are really

22     issues -- they're instructional issues and they are legal

23     issues for trial or posttrial.  We don't really think that the

24     most thorny legal issues presented in this case are ones for

25     pretrial motions.

HB89CHOC

1    We do anticipate that we are going to have some

2    disputes with regard to discovery.  It may be that we're able

3    to resolve them.  In particular, they revolve around the

4    following, your Honor.

5    The SEC has a parallel investigation of this matter.

6    And they, in fact, brought a civil complaint and have a pending

7    action against the alleged coconspirator who is not in the

8    jurisdiction.  So they have a parallel investigation and, as we

9    understand it, the government does not propose to provide us

10   with all of the discovery that the SEC has developed in their

11   investigation of the alleged coconspirator.  And there are --

12   when there's a parallel investigation, we believe that there

13   are some well founded Brady and Giglio motions and discovery

14   motions directed at discovery of the SEC's files.  And it may

15   be that we can reach agreement with the government and with the

16   SEC on that.  But that's a potential issue out there.

17   Mr. Kobre also mentioned that there's one piece of

18   hardware that was seized from the defendant whom the -- at

19   which the government does not propose to return in discovery.

20   And my understanding is that the government has seized a

21   particular iPad and that due to issues that the government has

22   with encryption and the like with Apple or whoever the

23   manufacturer of the iPad is -- I think it's Apple -- that they

24   have not been able to themselves access any information on that

25   iPad pursuant to a search warrant that they may have.

HB89CHOC

1          Obviously, we feel like if they have a search warrant

2     and they can execute it, they're entitled to do so.  If they

3     can't execute a search warrant and it's now expired we should

4     have that back.  We may have a disagreement with the government

5     on that.  But that's another discovery issue.

6          With regard to -- since we know this is going to be a

7     trial, we also are very cognizant of the following.  Mr. Chow,

8     who is the head of a major private equity fund in America and

9     has had no issues with the law whatsoever is, needless to say,

10    absolutely hobbled by what's happened to him here.  He'd like

11    to go on with his life and his chances of doing so really do

12    require an expeditious day in court.

13         We don't wish to create any artificial deadlines, and

14    we want to find a time that, for a trial that works for the

15    court and works for the government but that's in the near term

16    and serves the important interests of Mr. Chow in a speedy

17    trial.

18         We've been discussing with the government the

19    possibility of setting a trial date and kind of backing into

20    it.  And we were thinking something in the spring of next year

21    which allows us to get to trial reasonably soon and gives both

22    the government and the defense adequate time to prepare.

23         This is not a cooperator case.  It's not really even a

24    witness case.  We expect the government will have a few

25    witnesses who will largely speak to uncontested facts.  And the

HB89CHOC

```
1    rest will be documents and a few tape recordings and texts.  So
2    it's pretty simple.
3            Defense case we expect we'll have, but no more than a
4    week.
5            And so we were thinking maybe the right course here
6    would be to pick a trial date and back into it.
7            THE COURT:  Thank you.
8            Let me hear from the United States.
9            MR. KOBRE:  Sure.  Your Honor, with respect to the --
10   just first with respect to the two discovery issues raised by
11   defense counsel, we've had some just preliminary conversations
12   with defense counsel.  And so I don't think those conversations
13   are done and, as defense counsel says, it may be something that
14   ultimately we are able to resolve.  So I don't know that I need
15   to say much more on it right now unless your Honor is
16   interested in sort of our general response at this point.
17           THE COURT:  I don't think I need to hear more about
18   that at this time.  I think the parties are able to resolve
19   those issues amicably.
20           MR. KOBRE:  Thank you, your Honor.
21           With respect to a trial date, the government is
22   certainly amenable to the setting of a trial date and also
23   wishes to accommodate defendant's right to a speedy trial.
24   We've had some preliminary conversations about potential dates.
25   Myself and Ms. Kramer do have some trials that I think are in
```

HB89CHOC

1   April and maybe extending into May.  So we would actually

2   propose, your Honor -- well, your Honor, I think from the

3   government's perspective we could -- we're obviously ready to

4   go to trial whenever the Court sets a date.  But if I could --

5   if I might just have a moment.

6          THE COURT:  Please.  Take your time.

7          While you're doing that.  Just a couple of notes.  I'm

8   looking at my schedule as we're speaking.  I have a two-week

9   trial in March.  And so I think that I'm looking at April as

10  the most likely month in which I could do a trial in the

11  spring.  Starting on April 30 I have the U.S. v. Harrington and

12  Reichberg trial which the parties have told me they anticipate

13  will last six to eight weeks.

14         So assuming that that estimate is accurate, it may be

15  that the best opportunity for us to try this case in the spring

16  would be to do it sometime in April.  And that may put

17  pressure, Mr. Kobre and Ms. Kramer on your trial schedules in

18  April.  And I'd be interested in hearing how flexible you can

19  be.

20         MR. KOBRE:  Thank you, your Honor.

21         Just one moment.

22         THE COURT:  Thank you.

23         (Pause)

24         THE COURT:  Also counsel for the United States as

25  you're thinking about this I'd be interested in hearing what

HB89CHOC

1    you anticipate the duration of the trial will be.

2              MR. KOBRE:  Yes, Judge.

3         (Pause)

4              MR. KOBRE:  So, your Honor, apologies for the delay.

5              THE COURT:  Not a problem.

6              MR. KOBRE:  It does –– mid-April does present issues

7    for the government and the reason is, your Honor, Passover is

8    the last week I think of –– is early April and it would be

9    difficult to prepare for the trial in less than a week or two

10   weeks.

11             THE COURT:  Thank you.  I was actually going to

12   propose that we would begin on –– we might have to begin on,

13   depending on your estimate regarding the length of the trial,

14   on the second of April.  I can clear my schedule to make that

15   week and most of the following week available.  I have

16   conflicts on the 12th and 13th when I couldn't sit.  And

17   then I could free the week of the 16th if this is

18   approximately a three-week trial.

19             MR. KOBRE:  Your Honor, I apologize.  Passover begins

20   on April –– on March 31 and it basically is the first week, the

21   entirety of the first week of April.  And then, your Honor,

22   there is Ms. Kramer has a trial that begins on April 30 which

23   is a four-week trial which she does need some time to prepare

24   for.

25             THE COURT:  Thank you.  Understood.

HB89CHOC

1          MR. KOBRE:  With respect to the length of the trial,

2    your Honor.

3          THE COURT:  Yes.

4          MR. KOBRE:  So we think that the government's case

5    will be approximately a week.  It sounded from defense counsel

6    that they may have up to a week.  So approximately a two-week

7    trial, maybe give or take a few days.

8          MR. CANELLOS:  Would that allow for April 9, the

9    competing schedules allow for a trial on April 9?  Any of the

10   dates that your Honor has referenced would be fine for the

11   defense and, obviously, if we could avoid the first week of

12   April, we'd like to accommodate those who are observant.  So

13   would April 9 allow your Honor as well as the government a

14   window of opportunity?

15         THE COURT:  Thank you.  It would certainly work for

16   the Court with the caveat, as I said, that I won't be able to

17   sit at all on the 12th or 13th.  But we could try the case

18   the week of the 9th, the 16th, and the 23rd.  And it may be

19   that those would be the Court's preferred days to proceed given

20   Mr. Chow's interest in taking this case to trial promptly with

21   apologies, particularly with respect to the potential

22   interference with the observance, but I understand it not to

23   directly conflict, and also the understand the potential impact

24   on Ms. Kramer's trial.

25              So please tell me, counsel, if you can accommodate a

HB89CHOC

1    trial for Mr. Chow starting the 9th.

2            MR. KOBRE:  Your Honor, just to be forthright it would

3    be extremely difficult.  I'm going to be out of the office and

4    just really unable to prepare at all for many of those days.

5            If it was the 16th, your Honor -- oh, but that would

6    actually -- that would create even more of a problem for

7    Ms. Kramer.  So it really would be --

8            THE COURT:  Could we front load more of the work.  So,

9    for example, I'd be happy to have our final pretrial conference

10   sooner than one customarily would so that we can complete our

11   work on motions in limine and voir dire and the like and make

12   good progress on jury instructions in March so that the -- a

13   lot of the pretrial work would be done.

14           As I understand it from defendant's position, there's

15   not going to be a disposition here.  So front loading that work

16   is something that I'd be happy to do if it takes the pressure

17   off of the high holiday week and would allow us to begin a

18   trial on the 9th.

19           MR. KOBRE:  Can I just have one moment.

20           THE COURT:  Please.  Take your time.

21           (Pause)

22           MR. KOBRE:  Thank you, your Honor, for that time.

23           So would it be possible to -- just trying to eek out

24   another day or so of being able to prepare for trial, to pick a

25   jury on the 10th and begin hearing testimony on the 11th?

HB89CHOC

1      THE COURT:  My concern about that, unfortunately, is

2   my immutable conflict on the 12th and 13th.  So it wouldn't

3   give us much time to get work done that week.

4      MR. KOBRE:  Just one more moment your Honor.  I'm

5   sorry.

6      THE COURT:  Not a problem.

7      (Pause)

8      I'll also say one other thing which is I have a trial

9   scheduled for the first two weeks in February that are civil

10  trials so I could theoretically move those if that would be

11  helpful and we can't make April work.  It seems to me that

12  April would work best otherwise, at least for defense counsel

13  as I understand the proposal.

14     MR. KOBRE:  Your Honor can we propose, again

15  recognizing that the 12th and the 13th your Honor would not

16  be sitting, but could we start on the trial on the 10th and

17  this way at least we get two days, if we get the testimony on

18  the 10th, then great, and at least that will give one

19  additional day?

20     THE COURT:  As opposed to the 9th?

21     MR. KOBRE:  Correct, your Honor.

22     THE COURT:  Let me hear counsel for defendant's views

23  regarding that proposal.

24     First let me ask everybody to make sure that you think

25  that we'll have enough time, assuming that the government's

HB89CHOC

1  case, as they anticipate, and the defense has approximately a

2  week.  As I say, I've got another trial that begins on the

3  30th of April which is the conflict at the back end.  And

4  I'll say that that's part of my concern about starting on the

5  9th.

6       But with that said, counsel for defendant, what's your

7  view regarding the government's proposal?

8       MR. CANELLOS:  So either the 9th or the 10th of

9  April would be fine as a start date.  And given -- I recognize

10 there's two blackout dates in the -- that come later, but still

11 with three weeks plus a couple of blackout dates, I think we

12 feel pretty confident that both the government's and the

13 defense cases could be completed.

14      THE COURT:  Thank you.

15      Yes, counsel.

16      MR. KOBRE:  I'm sorry, your Honor.  We may have one

17 potential additional alternative proposal.

18      THE COURT:  Proceed.

19      MR. KOBRE:  Just 30 more seconds.

20      (Pause)

21      MR. KOBRE:  Your Honor, and I apologize if -- there's

22 a lot of dates flying around here.  So I apologize if this is

23 something that that your Honor has said wouldn't work for the

24 Court.  But with March 19th work?  That would give us -- that

25 would get the trial in before Passover and would work for

HB89CHOC

1     Ms. Kramer and wouldn't push her to have little time -- fairly

2     little time to prepare for her May 30 trial -- I'm sorry,

3     April 30.

4               THE COURT:  Passover is the week of the second?

5               MR. KOBRE:  It is.

6               THE COURT:  Thank you.  Would that give enough time,

7     given the defense's anticipation, that they'll have a week of

8     defense?

9               MR. CANELLOS:  That's the only consideration, your

10    Honor, that it's a really, really tight two weeks.  Jury

11    deliberations could go on.  But picking a jury too, it includes

12    picking the jury.

13              MR. KOBRE:  Your Honor, I think that would be fine.

14    If the concern is for the Jewish holiday, the Jewish -- the

15    beginning of the Jewish holiday is the Saturday and Sunday.  So

16    I would be able to attend in court on Monday or Tuesday should

17    it spillover.

18              THE COURT:  Monday or Tuesday, the second or third?

19              MR. KOBRE:  Correct, your Honor.  The Jewish holiday,

20    it kind of comes in two parts.  There's two days of sort of an

21    observance where I can't participate, and then a few days where

22    I can, and then a few days where I can't again.  So that's sort

23    of the consideration.  It turns out Saturday and Sunday, the

24    1st -- I'm sorry, the 31st and the 1st are days when I won't

25    be able to be involved; but the 2nd, the 3rd, and 4th I can.

HB89CHOC

1          THE COURT:  Thank you.

2          I unfortunately have another conflict those two weeks,

3     the 19th and the 26th.

4          What I'm going to do as a result is I'm going to

5     schedule trial to begin on the 9th of April with apologies.

6     I will, however, after this conference see what I can do to

7     change my schedule for the weeks of the 19th and 26th.  I

8     can't make any promises.  But if I can adjust my schedule for

9     those weeks, I will.  And if I can't I'll simply issue an order

10    setting the trial for the 19th.  Otherwise, I'm going to ask

11    the parties to be prepared to proceed to select a jury

12    beginning on the 9th.

13         I will set a final pretrial conference for sometime

14    earlier in the month of March, earlier than is customary, so

15    that we can front load as much of the labor preparing for trial

16    as we can and push it out of the month of April and, of course,

17    the parties are free to take their time with their witnesses to

18    prepare for trial at any time.  You need not do that

19    immediately before trial.

20         So I'll set down April 9th as the date on which we

21    will begin.  We will need to be efficient.  But I think that we

22    can do it if the parties are focused.

23         Again, I will try to see if I can change my schedule

24    for the weeks of the 19th and the 26th but I'm making no

25    promises.

HB89CHOC

1              MR. KOBRE:  Thank you very much.

2              THE COURT:  Good.  I'm sorry that I couldn't be more

3      accommodating but I do appreciate Mr. Chow's desire to get to

4      trial promptly and his right to get to trial promptly.

5              MR. CANELLOS:  Your Honor, to -- I think where we have

6      come to rest is just fine with us.  For a variety of scheduling

7      reasons on our end, the 19th and the 26th wouldn't be

8      ideal, but if there were no alternatives we would find a way

9      also to try to accommodate the Court.  But if we can work the

10     April 9, I think it works for everyone's schedules and it

11     should accommodate enough time for the trial.

12             THE COURT:  Good.  Thank you.

13             So let's plan with that in mind.

14             So let me propose this.  As I understand it, we don't

15     know at this time whether or not there are likely to be motions

16     that require a hearing.  From what I've heard from you,

17     counsel, at this point in time it does not sound as though

18     there will be.

19             That said, what I would like to do is I will set a

20     schedule for any motions when I get back to chambers backing

21     from the April 9th date.

22             I'll also set a final pretrial conference date

23     sometime in early or mid-March.

24             If you all want to have another conference in the

25     interim, I'd be happy to accommodate that but I think that I

1    can set a schedule by written order after today's conference

2    that will build in time for motions and a potential hearing.

3          And I'll also direct you to my individual rules with

4    respect to pretrial materials that might obviate the need for

5    an additional hearing that brings Mr. Chow here before trial.

6    That said, if you want to meet with me before then you're

7    welcome to write and make the request.

8          So my proposal then is to order that trial take place

9    on April 9.  By doing so, counsel, you should be aware that

10   that will be a firm date unless I move it forward to the date

11   in March which, again, is -- seems to be something I cannot

12   promise and you should not rely on.  So do not expect the

13   April 9 date to change.  If I am able to change it, I'll change

14   it in the course of the next week.

15         Now, Mr. Chow, just a note for your benefit.  If any

16   circumstances arise and you want or need to change counsel, for

17   example, if you want to obtain other counsel or if you become

18   eligible for appointed counsel, you should -- because you

19   cannot afford counsel, it's crucial that you let me know that

20   as soon as possible.  I say that because a lawyer needs

21   adequate time to prepare for trial and the date that I've just

22   scheduled for trial is not going to move back in time.  It may

23   move forward in time.  So if you wait until before the trial

24   date in order to request replacement of counsel I may not grant

25   your application and, therefore -- or I may grant it and your

HB89CHOC

```
 1   new lawyer may not have enough time to prepare for trial.  So
 2   if you are considering that, please raise it as soon as
 3   possible with me.
 4           Good.  Is there any anything else we should address
 5   before we come to the Speedy Trial Act?
 6           MR. KOBRE:  Not from the government your Honor.
 7           THE COURT:  Thank you, counsel.
 8           MR. CANELLOS:  Your Honor, there's one issue about
 9   what I think is a minor proposed modification of the existing
10   bail package.
11           I've discussed it with the government but I haven't
12   heard their response.  So we have always had bail packages on
13   consent here.  And when Mr. Chow was originally arrested in his
14   home in the Northern District of California, we agreed to
15   provide the government with not just Mr. Chow's passport, which
16   is not controversial, but also the passport of his wife and two
17   minor children.  Given that we now have a several months lull
18   between now and trial, it doesn't seem like their travel should
19   be unsettled by this matter and we would like to, hopefully
20   with the government's consent, get the passports back for the
21   wife and two children.
22           The one other issue is, if your Honor's prepared to
23   accommodate it, it would be helpful for us to have nationwide
24   travel for Mr. Chow.  Right now he can travel to a number of
25   districts but not all districts.  And just having unfettered
```

HB89CHOC

1    travel within the United States would be helpful.

2              THE COURT:  Thank you.

3              Can I ask counsel for defendant:  Do you have the

4    views of the pretrial services officer with respect to either

5    of those requests?

6              MR. CANELLOS:  We do not.

7              THE COURT:  United States, what's your view?

8              MR. KOBRE:  Your Honor, so I first learned of this

9    request just right before we began the conference.  I think,

10   your Honor, the government is inclined to -- and again I think

11   the views of pretrial services would be helpful to the

12   government as well.

13             THE COURT:  Thank you.  Let me do this.  Counsel for

14   defendant please confer with the United States.  Please discuss

15   the request with Mr. Chow's pretrial services officer.  Write

16   me with your request.  Include in your letter the positions of

17   the United States and the pretrial services officer with

18   respect to the request.  And I will act on the letter.

19             MR. CANELLOS:  That's fine.  Thank you, your Honor.

20             THE COURT:  Good.  Thank you.

21             United States, is there -- first, can you tell me

22   where we are with respect to the speedy trial clock?

23             MR. KOBRE:  Yes, your Honor.

24             So I believe, your Honor, we've lost two days.  The

25   clock ran on October -- the indictment was returned on

HB89CHOC

1   October 30.  And so October 30 and 31 are days when time had

2   not been excluded.  But your Honor, by an order dated

3   November 1, excluded time through today.  So we have 68 days

4   remaining.

5           THE COURT:  Thank you very much.  Does the government

6   have an application?

7           MR. KOBRE:  We do, your Honor.  The government moves

8   to exclude time under the Speedy Trial Act from today through

9   April 9, 2018 and that would be for the defense to receive and

10  review the discovery, consider the possibility of making any

11  motions and to enable defense counsel to effectively prepare

12  for trial.

13          THE COURT:  Thank you.

14          Counsel for defendant, what's your view?

15          MR. CANELLOS:  So the April 9 trial date is fine as

16  long as that holds I don't think we have any other concerns,

17  but wouldn't it be more sensible, just to keep a tight

18  schedule, recognizing Mr. Chow's speedy trial rights, to just

19  exclude time between now and the next scheduled conference?

20          THE COURT:  Thank you.

21          I would be happy to accommodate that although I wasn't

22  planning to set an intervening conference.  I can do so,

23  however, if you like.

24          Do you think that we need an intervening conference to

25  discuss anything before the final pretrial conference?  I know

HB89CHOC

1    it's difficult to predict.  I was going to schedule a hearing

2    date but it's not apparent to me that there will necessarily be

3    a need for a hearing here.

4              MR. CANELLOS:  We will most likely have some motions.

5    So maybe if you set a control date for motions and if -- and we

6    can appear before your Honor and if there is no need for us to

7    appear before your Honor for -- at that date, we'd be happy to

8    workout with the government a stipulation of exclusion of time

9    going forward.

10             THE COURT:  Thank you.

11             Is there a day of the week that's more convenient for

12   Mr. Chow to be in New York?

13             MR. CANELLOS:  Avoiding Mondays would be preferable.

14   Any other day of the week would be fine.

15             THE COURT:  Thank you.

16             Let me propose then that we set an interim conference

17   at which I expect that I would hear any evidence with respect

18   to any motion that requires a hearing on February 9 at 11 a.m.

19             Does that date and time work for the parties?

20             MR. KOBRE:  It does for the government, your Honor.

21             MR. CANELLOS:  It does for the defense.

22             THE COURT:  Good.  Thank you.

23             So I understand the request is that I modify the

24   government's suggestion that we exclude time through the trial

25   date to the request that we exclude time through the

HB89CHOC

 1    February 9, 2017 conference.

 2              Is that correct, counsel?

 3              MR. CANELLOS:  Yes, your Honor.

 4              THE COURT:  Thank you.  And you consent to the

 5    exclusion of time through that date?

 6              MR. CANELLOS:  Yes, we do.

 7              THE COURT:  Thank you.

 8              So I'm going to exclude time from today until

 9    February 9, 2018.  I find that the ends of justice served by

10    excluding such time outweigh the best interests of the public

11    and the defendant in a speedy trial because it will allow time

12    for production of discovery and review of those materials by

13    the defendant, time for the defendant to consider and prepare

14    any motions, and time for the parties to begin to prepare for

15    trial of this matter.

16              Is there anything else that we should discuss before

17    we adjourn?

18              Counsel for the United States?

19              MR. KOBRE:  No, your Honor.

20              I just wanted to mention with respect to the

21    discovery, I know defense counsel is already aware of this, but

22    just to advise the Court that the discovery is -- electronic

23    discovery in this case includes a fair amount of Chinese

24    language communications.  So often that presents an issue as

25    far as getting things translated.  Obviously it does to the

HB89CHOC

1  government.  And defense counsel is already aware of it.  But I

2  just wanted to advise the Court.  Other than that, nothing at

3  all.

4           THE COURT:  Thank you, counsel.

5           Counsel for the defendant?

6           MR. CANELLOS:  Nothing.  Nothing further, your Honor.

7           THE COURT:  Thank you very much.  This proceeding is

8  adjourned.

9           (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25