USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/4/2017

# MILBANK, TWEED, HADLEY & M°CLOY LLP

**28 LIBERTY STREET**

**NEW YORK, NY 10005**

212-530-5000

FAX: 212-530-5219

Katherine R. Goldstein
Partner
DIRECT DIAL NUMBER
212-530-5138
E-MAIL: kgoldstein@milbank.com

**LOS ANGELES**
424-386-4000
FAX: 213-629-5063

**WASHINGTON, D.C.**
202-835-7500
FAX: 202-835-7586

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49-69-71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SEOUL**
822-6137-2600
FAX: 822-6137-2626

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

**SÃO PAULO**
55-11-3927-7700
FAX: 55-11-3927-7777

November 27, 2017

**MEMORANDUM ENDORSED**

**VIA ECF**

Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Benjamin Chow*, 17 Cr. 667 (GHW)

Dear Judge Woods:

We respectfully submit this letter in opposition to the *ex parte* nature of the government's submission dated November 27, 2017. The government failed in its initial submission concerning its proposed protective order to proffer any justification for the heightened security measures it seeks to impose on Mr. Chow in reviewing discovery, and made no attempt to distinguish the vast majority of insider trading cases in this district in which no such burdens were imposed. Only *after* Mr. Chow's reply, which demonstrated that the cases cited by the government in its responsive letter were inapposite, did the government offer to make an *ex parte* submission which would purportedly help the government meet its burden.

But such a submission should not be permitted. *First*, the post-hoc effort to justify the government's overbroad protective order must be viewed as pretextual, as the government failed to offer a compelling justification for the undertaking requirement in its primary submission to the Court. *Second*, and more important, the *ex parte* nature of the submission is not warranted in this case because, even under the government's proposed protective order, Mr. Chow would be permitted to view the discovery in its entirety, and to show it to others so long as the discovery material was not left in their possession. While the identities of cooperating witnesses and targets of government investigations may in some circumstances justify an *ex parte* submission, that is certainly not the case if the identities are revealed in the discovery materials themselves.

Hon. Gregory Woods
November 27, 2017
Page 2

The case law recognizes as much. *Ex parte* submissions are strongly disfavored in criminal cases. *See, e.g.*, *In re Taylor*, 567 F.2d 1183, 1188 (2d Cir. 1977) ("The value of a judicial proceeding … is substantially diluted where the process is *ex parte* because the court does not have available the fundamental instrument of judicial judgment: an adversary proceeding in which both parties may participate.") (internal citation omitted); *United States v. Napue*, 834 F.2d 1311, 1319 (7th Cir. 1987) ("Even where the government acts in good faith and diligently attempts to present information fairly during an *ex parte* proceeding, the government's information is likely to be less reliable and the court's ultimate findings less accurate than if the defendant had been permitted to participate."); *see also Schiller v. City of New York*, No. 04 Civ. 7921 (RJS), 2008 WL 1777848, at *5 (S.D.N.Y. Apr. 14, 2008) (("[T]he overwhelming weight of authority favors the view that a court's reliance on *ex parte*, *in camera* submissions is strongly disfavored.") (Sullivan, J.). While Rule 16(d)(1) permits consideration of an *ex parte* submission in support of the "good cause" showing, that is a permissive, not mandatory, provision; it is left to the court's discretion to consider how much, if any, of the proceedings should be conducted *ex parte*. *See United States v. George*, 786 F. Supp. 11, 16 (D.D.C. 1991) ("*Ex parte* proceedings are generally disfavored, even when the federal rules expressly permit them."); Fed. R. Crim. P. 16, adv. comm. notes ("[I]f a party requests a protective or modifying order and asks to make its showing *ex parte*, the court has two separate determinations to make. First, it must determine whether an *ex parte* proceeding is appropriate, bearing in mind that *ex parte* proceedings are disfavored and not to be encouraged. Second, it must determine whether a protective or modifying order shall issue.").

In this case, the government does not seek to withhold or defer the production of certain discovery on the ground that, for example, its disclosure would threaten an ongoing criminal investigation or cause prospective targets to flee. Further, there is no risk that the discovery materials in this case will identify cooperating witnesses because there are none, nor is there any suggestion that witness safety may be implicated by the government's disclosures. In these circumstances, there is simply no basis for an *ex parte* submission. *Cf. United States v. Loera*, 09 Cr. 466 (BMC), 2017 WL 2821546, at *4-5 (E.D.N.Y. June 29, 2017) (relying on the government's *ex parte* submission in criminal prosecution of "el Chapo," and holding that the submission justified *deferring* the production of "certain discovery related to cooperating witnesses, confidential sources, the ongoing investigation, and law enforcement techniques until later down the line"). Moreover, it would be inappropriate to file *ex parte* any part of the government's letter that merely adds additional arguments or purported legal support for the heightened protections sought by the government. If the government believes that certain materials are so sensitive that Mr. Chow must secure the signatures of those to whom it wishes to give these specific materials for review—an extraordinary measure not sought in matters with far more sensitive discovery material—then the government should do the hard work of identifying those materials and justifying the need to treat them differently. This the government has not done.

Finally, although Mr. Chow is limited in his ability to respond to the government's *ex parte* submission, we assume for the purposes of this letter that the government has revealed that it is continuing to investigate the person identified as CC-1 in the indictment in connection with the trades at issue in this case and perhaps others. That is to be expected: while the SEC has

November 7, 2017

brought a civil enforcement proceeding against CC-1, CC-1 has not to date been publicly named in a criminal charging instrument. Notably, virtually all insider trading charges yield additional avenues of investigation. Certainly that was true in the government's recent series of insider trading investigations involving expert networks, which yielded dozens of indictments but not one charged defendant who was subject to a protective order with the restrictions sought in this case. *See, e.g.*, *United States v. Mathew Martoma*, 12 Cr. 973 (PGG), Dkt. # 9, Stipulated Protective Order, dated Jan. 3, 2013. Therefore, even if the government is able to identify "ongoing criminal investigation(s) and third-party privacy interests that are implicated in the Government's discovery in this case," as proffered in their November 17, 2017 submission, such a proffer would not differentiate this case from any other insider trading case. Indeed, this logic would be as flawed as the government's assertion that this case warrants special measures because the discovery contains material such as bank and trading records: taking the argument at face value, virtually *every* business crime case would require an unusually restrictive protective order—an outcome at odds with the law and the government's past practice in like cases.

We respectfully request that the Court require the government to share its submission with the defense or, at a minimum, require the government to provide a redacted version of its submission, making only those redactions permitted by law.

Respectfully submitted,

/s/ Katherine R. Goldstein

George S. Canellos
Katherine R. Goldstein
Adam Fee

cc: All counsel of record via ECF

Application denied. The *ex parte* communication presented to the Court contains information regarding ongoing criminal investigation. Because disclosure of that information would reasonably be expected to have an adverse effect on ongoing criminal investigation, the Court finds that the presumption of public access to judicial records is overcome, and that the Government's submission may be filed under seal. For the avoidance of doubt, this determination does not relieve the United States of any obligation it might otherwise have to disclose any of the underlying information to defendant under Rule 16, *Brady*, *Giglio*, or otherwise.

SO ORDERED.

Dated: November 30, 2017
New York, New York

_____
GREGORY H. WOODS
United States District Judge