UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.

BENJAMIN CHOW,
    a/k/a "Ben Chow Zhou Bin,"
    a/k/a "Benjamin Bin Chow,"
    a/k/a "Bin Zhou,"

        Defendant.

17 Cr. 667 (GHW)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO QUASH AND PRECLUDE USE OF EVIDENCE OBTAINED THROUGH IMPROPER USE OF GRAND JURY SUBPOENA

**PRELIMINARY STATEMENT**

Defendant Benjamin Chow respectfully submits this motion to quash the grand jury subpoena issued to one individual who is a partner in the private equity fund founded by Mr. Chow, Partner-1 (the "Partner-1 Subpoena"), and to preclude the government's use of the evidence obtained as a result of the subpoena served on another partner in the fund, Partner-2, (the "Partner-2 Subpoena") (collectively the "Subpoenas"), including Partner-2's grand jury testimony. As the timing and sequence of events make clear, including the fact that the Partner-2 Subpoena was issued *after* the indictment was returned and enforcement of the Partner-1 Subpoena is being sought *after* the government represented to the Court that there would be no new defendants or charges added before trial in this matter, the Subpoenas were obtained for the improper purpose of preparing for trial on the already pending indictment.

**RELEVANT FACTS**

On October 30, 2017, the grand jury returned an indictment against Mr. Chow. *See* Ind., ECF No. 2. The Indictment charged Mr. Chow with securities fraud and conspiracy to commit securities fraud under 15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. 240.10b-5, 18 U.S.C. §§ 371, 1348 and 2. Specifically, Mr. Chow is alleged to have provided material non-public information regarding a potential acquisition of Lattice Semiconductor Corporation ("Lattice") to Shaohua "Michael" Yin, identified in the Indictment as CC-1, in violation of applicable antifraud fraud provisions and rules. *See id.* ¶¶ 6, 28. Mr. Yin is alleged to have made profitable trades in Lattice stock after receiving this information from Mr. Chow. *Id.*

The Indictment alleges that, in connection with an inquiry into possible insider trading in Lattice, Mr. Chow made a false statement to the Financial Industry Regulatory Authority

1

("FINRA"[1]) in a letter response (the "FINRA Response") to FINRA's ongoing request for information issued to Canyon Bridge Capital Partners, LLC ("Canyon Bridge"), the private equity firm founded by Mr. Chow. *Id.* ¶ 28.

In the week before the Indictment was returned, the government issued grand jury subpoenas to (1) Partner-1, a partner in Canyon Bridge, and (2) Attorney-1 (the "Attorney-1 Subpoena"), a lawyer who served as outside counsel to Canyon Bridge in connection with the FINRA Response. *See* Darmer Decl., Exs. A (Partner-1 Subpoena) (issued on October 23, 2017 with a return date of October 30, 2017); B (Attorney-1 Subpoena) (issued on October 26, 2017 with a return date of November 6, 2017). The Attorney-1 Subpoena sought testimony in regard to alleged violations of 15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. §§ 371, 1341, 1343, 1348 and 1349. *See* Darmer Decl., Ex. B (Attorney-1 Subpoena). The Partner-1 Subpoena cited the same offenses, but also cited two money laundering statutes, 18 U.S.C. §§ 1956 and 1957. *Id.*, Ex. A (Partner-1 Subpoena).

On October 30, 2017, the same day the Indictment was returned, Attorney-1 testified before the grand jury. *See* Darmer Decl. ¶ 6. In advance of Attorney-1's testimony, the government agreed not to ask questions of Attorney-1 that would infringe on Canyon Bridge's attorney-client privilege. *Id.* ¶ 5. In a preparation session with the government, Attorney-1 was principally

---

[1] FINRA is the successor to the National Association of Securities Dealers. *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 114 (2d Cir. 2011). It is a non-governmental, self-regulatory organization ("SRO") that "is responsible for conducting investigations and commencing disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." *Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 571 (2d Cir. 2011) (quoting *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 157 (2d Cir. 2002)).

questioned about the sequence of events in connection with the preparation of the FINRA Response, including any role played by Mr. Chow. *See id.* ¶ 8.

On November 3, 2017, after Mr. Chow had been indicted, the government issued a grand jury subpoena to Partner-2, Canyon Bridge's general counsel. *See* Darmer Decl., Ex. C (Partner-2 Subpoena). With the exception of the addition of a single citation to an obstruction of justice statute, 18 U.S.C. § 1519, the Partner-2 Subpoena cited the same statutory offenses listed in the pre-indictment subpoena issued to Attorney-1.[2] *See id.*

On November 7, 2017, the government called Partner-2 to testify before the grand jury. *See* Darmer Decl. ¶ 9. As with Attorney-1, the government agreed not to ask questions of Partner-2 that would infringe on Canyon Bridge's attorney-client privilege. *Id.* ¶ 10. In a preparation session in advance of Partner-2's testimony, the government proposed to question Partner-2 on topics that were substantially similar to those the government had discussed with Attorney-1 prior to Attorney-1's grand jury testimony, including the chronology of Partner-2's involvement in the preparation of the FINRA Response and any role played by Mr. Chow. At the meeting, the government did not inquire about Partner-2's (1) knowledge of whether and in what instances FINRA referrals may be made within the jurisdiction of departments or agencies of the United States; or (2) knowledge at the time of the preparation of the FINRA Response of the pendency or potential of any federal investigation. *Id.* ¶ 11.

---

[2] Like the subpoenas issued to Attorney-1 and Partner-1, the Partner-2 Subpoena also sought testimony regarding violations of 18 U.S.C. §§ 1341, 1343, and 1349. *See* Darmer Decl., Ex. C (Partner-2 Subpoena). For the Court's reference, provided at Appendix A is a chart comparing the charges listed in Mr. Chow's Indictment with the statutes cited in the Subpoenas issued to Attorney-1, Partner-1, and Partner-2.

3

On November 8, 2017, just one day after Partner-2's post-indictment grand jury appearance, Mr. Chow appeared for an initial appearance before Your Honor. When asked by the Court whether the government "anticipate[d] filing any superseding indictments adding defendants or additional charges," the government stated unequivocally: "We do not, [Y]our Honor." *See* Tr. at 10:2-5, ECF No. 18. Indeed, despite the opportunity, the government made no mention of a pending investigation into a potential obstruction of justice charge or any other offense or defendant.

To this day, the government has persisted in its efforts to obtain Partner-1's post-indictment grand jury testimony. As of the date of this motion, the government has scheduled Partner-1's appearance before the grand jury on December 20, 2017, at which the government has proposed to elicit testimony on the following topics: (1) Partner-1's work for Canyon Bridge; (2) Partner-1's relationship and discussions with Mr. Chow, including conversations Partner-1 may have had with Mr. Chow during the course of the Lattice transaction; (3) how and when Partner-1 and Mr. Chow met and began working together; (4) conversations Partner-1 may have had with Mr. Chow before Partner-1 came to work for Canyon Bridge; (5) whether Partner-1 knows Mr. Yin; (6) Partner-1's involvement in the receipt and preparation of the FINRA Response; and (7) "some of the facts that have come up in [the government's] investigation." *See* Darmer Decl. ¶ 10.

## APPLICABLE LAW

### A.  Grand Jury Abuse

It is well established "in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial." *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985) (quoting *United States v. Dardi*, 330 F.2d 316, 336 (2d Cir. 1964)); *see also United States v. Leung*,

40 F.3d 577, 581 (2d Cir. 1994) (the government may not use grand jury subpoenas for "the sole or dominant purpose of preparing for trial under a pending indictment"); 8 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 6.04[5] at 6-86 (1984)).  Rather, the government may only use post-indictment grand jury subpoenas to investigate new charges or additional defendants.  *See, e.g.*, *United States v. Jones*, 129 F.3d 718, 723 (2d Cir. 1997); *United States v. Vanwort*, 887 F.2d 375, 387 (2d Cir. 1989); *see also United States v. Flemmi*, 245 F.3d 24, 29 (1st Cir. 2001) (noting that a "sufficiently substantial change [will] defeat an accusation of grand jury abuse.").  The danger recognized by courts is that when "later proceedings by the same grand jury are used to assist the prosecutor in preparing the case resulting from the first indictment for trial by gathering evidence to support it, the grand jury indeed becomes an agent of the police or, to put it pejoratively, the prosecutor's tool."  *United States v. Eisen*, 1990 WL 164681, at *11 (E.D.N.Y. 1990) (citing *Simels*, 767 F.2d at 30).

While the party asserting a claim of grand jury abuse bears the burden, "[t]he individual circumstances of a case often determine the kind of showing that a party must make to invoke the rule's protection."  *United States v. Raphael*, 786 F. Supp. 355, 358 (S.D.N.Y. 1992).  Courts look to "some indicative sequence of events demonstrating an irregularity," which may "shed an unflattering light on the Government's actions."  *Id.* at 359; *see also Simels*, 767 F.2d at 29-30 (finding abuse of grand jury subpoena after examination of the timing and sequence of events at issue).

Where abuse is found, the district court, pursuant to its inherent supervisory authority, is free, within constitutional bounds, to fashion the remedy it deems appropriate.  *See Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988).  Such relief may include quashing the subpoena and suppressing improperly obtained testimony and evidence derived therefrom.  *See, e.g., Simels*, 767

5

F.2d at 30 (quashing subpoena); *United States v. Flemmi*, 108 F. Supp. 2d 39, 60, 62 (D. Mass. 2000) (excluding at trial improperly obtained grand jury testimony and evidence derived therefrom), *rev'd on other grounds*, 245 F.3d at 30-31; *United States v. Kovaleski*, 406 F. Supp. 267, 270 (E.D. Mich. 1976) (precluding government from calling witness or using at trial witness's grand jury testimony to impeach or refresh his recollection).  The court may also further investigate by, for instance, inspecting *in camera* the grand jury materials and transcripts.  *See, e.g., Raphael*, 786 F. Supp. at 359 (ordering *in camera* inspection).

**B.     18 U.S.C. § 1519**

An individual violates 18 U.S.C. § 1519 if he or she:

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object *with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United State*s . . ., or in relation to or contemplation of any such matter or case . . . .

(Emphasis added).  While the defendant need not know of "an imminent or pending official proceeding," *United States v. Gray*, 642 F.3d 371, 377 (2d Cir. 2011), he must intend that his conduct will obstruct "the investigation or proper administration of any matter within the jurisdiction of . . . the United States."  18 U.S.C. § 1519; *see United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008) ("This statute . . . plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with intent to impede or influence a federal investigation.").

**ARGUMENT**

The government has abused the grand jury process.  The timing and sequence of events clearly reveal that the Subpoenas were issued for the dominant purpose of preparing for trial on the already pending indictment.

### A.     Partner-2's Testimony and Evidence Derived Therefrom Should be Suppressed

It is impermissible to use a grand jury subpoena to conduct clean-up factual investigation for the purposes of readying for trial on a pending indictment. In such circumstances, the grand jury ceases to perform its constitutional function and becomes instead the "prosecutor's tool." *Eisen*, 1990 WL 164681, at *11.

That is precisely what happened here. On November 3, after Mr. Chow was indicted, the government first issued the Partner-2 Subpoena—notwithstanding that (1) as early as September, when Mr. Chow was charged by federal complaint, the government had already concluded that the allegedly false statement in the FINRA Response was probative of the charges against Mr. Chow (*see* Crim. Compl., ¶ 12, ECF No. 1); and (2) the government had already issued a subpoena to Attorney-1, Canyon Bridge's outside counsel in connection with the preparation of the FINRA Response, and had obtained his testimony pre-indictment (*see* Darmer Decl. ¶¶ 4-6). In connection with Partner-2's November 7 grand jury appearance, the government proposed to cover largely the same topics as it had with Attorney-1. *See* Darmer Decl. ¶ 9. And on November 8, just one day after Partner-2's testimony, the government stated unequivocally to Your Honor that it did not intend to file any superseding indictments. *See* Tr. at 10:2-10:5, ECF No. 8.

The Second Circuit saw through similar abuse in *Simels*. There, the government had issued a post-indictment trial subpoena to the defendant's lawyer for evidence to support the government's preparation for an upcoming trial. Upon the defendant's objection, the government substituted the trial subpoena for one issued by the grand jury, but seeking the exact same evidence, even though the grand jury had not been active in months. The Second Circuit, reversing the district court, reasoned that while it was *possible* that the grand jury subpoena might have been properly issued following the withdrawal of the trial subpoena, the better inference to be drawn

7

from the timing and circumstances suggested that the government's use of the grand jury subpoena was pre-textual and therefore improper because it was for the dominant purpose of trial preparation. *See Simels*, 767 F.2d at 29-30 (finding "no reason to believe" that substitution of grand jury for trial subpoena, albeit a "laudable" attempt to deflect criticism, "signified a shift in the uses to which the government intended to put the information sought.") Thus, the Second Circuit ordered that the grand jury subpoena be quashed.[3]

As in *Simels*, the "sequence of events demonstrat[es] an irregularity" and "shed[s] an unflattering light on the Government's actions." *Raphael*, 786 F. Supp. at 359. Although the government will surely claim that it was actively investigating additional charges and/or defendants as of November 7 when Partner-2 testified in the grand jury, the timing of the Partner-2 Subpoena belies any such claim. *Cf. Simels*, 767 F.2d at 29 ("The timing of the subpoena casts significant light on its purposes."). A far more plausible explanation for the Partner-2 Subpoena is that the government, having failed to timely subpoena Partner-2's grand jury testimony pre-indictment, and perhaps having realized too late that Attorney-1's testimony did not provide the full chronology of the preparation of the FINRA Response, rushed to put Partner-2 in the grand jury post-indictment to lock in Partner-2's under-oath testimony. And knowing that such misuse of the grand jury process is disallowed, the government tacked on a citation to an obstruction of justice statute—which, as discussed below, does not even apply to these facts—in an effort to disguise its improper motive. The fact that the government was able to affirmatively disclaim any

---

[3] Similarly, in *Kovaleski*, the court found the timing of the at-issue subpoena "unusual." 406 F. Supp. at 270. There, the subpoena was issued two months after a mistrial, but before the start of the second trial. The government sought the testimony of an unindicted coconspirator who it did not call to testify at the first trial. After an *in camera* review of the grand jury transcripts, the court held that the government failed to rebut the evidence that its dominant purpose in issuing the grand jury subpoena was trial preparation. *Id.* at 271.

intent to bring new charges against Mr. Chow a mere *one day* after Partner-2's testimony confirms that there never was an obstruction of justice investigation in the first place.

Two more points merit attention. *First*, were it the case that Partner-2's testimony was sought in furtherance of an obstruction of justice investigation, one would have expected the Attorney-1 Subpoena to have included the same statutory citation given the overlap in their proposed testimony. That is especially so given the fact that the FINRA Response was well known to the government and had been for months, and that the subpoenas to Attorney-1 and Partner-2 were issued just days apart. Moreover, the absence during the pre-testimony meeting of any proposed questioning of Partner-2 concerning the connection between a FINRA inquiry and an SEC (or other federal agency) investigation is another probative point. *Second*, in an analysis of motive, it is noteworthy that a false or misleading representation to a private, self-regulatory organization such as FINRA, without more, does not support an obstruction charge under Section 1519. Certainly there are no reported cases holding that it does.[4] But even if Section 1519 could theoretically apply to the facts of this case, the timing of events here, as in *Simels*, simply do not suggest that an obstruction investigation was "the use[] to which the government intended to put the information sought." *Simels*, 767 F.2d at 30. Because the dominant purpose of the Subpoenas was pretrial preparation, the government has abused the sanctity of the grand jury process and

---

[4] In a single reported case where a Section 1519 charge was brought on the basis of an allegation, among others, that the defendant altered documents in connection with a FINRA examination, the defendant moved to dismiss the indictment on the ground that false representations to an SRO cannot support a Section 1519 charge. *See United States v. Motz*, 2009 WL 3394067 (E.D.N.Y. July 3, 2009). The district court, however, finding venue lacking, dismissed the Section 1519 charge without prejudice and without deciding the propriety of the count. *United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009). Motz subsequently pleaded guilty, but not to the Section 1519 count. *See* Judgment, *United States v. Motz*, 08 Cr. 598 (KAM) (E.D.N.Y. May 13, 2010), ECF No. 103.

should not be allowed to use the fruits of its misdeeds. *See Simels*, 767 F.2d at 30; *Kovaleski*, 406 F. Supp. at 371. At a minimum, however, the Court should order the government to provide for *in camera* inspection the transcripts of Partner-2's and Attorney-1's grand jury testimony. *See, e.g.*, *Raphael*, 786 F. Supp. at 359.

### B. Partner-1's Subpoena Should be Quashed

Partner-1's subpoena presents an even more compelling case of abuse. *First*, the government is attempting to enforce the subpoena even after having unequivocally disavowed any intention of filing a superseding indictment. Thus, the normal safe harbor for additional defendants or charges available to the government does not apply. *Second*, the proposed topics of inquiry fall squarely under the umbrella of clean-up testimony for the purposes of securing trial proof. *See* Darmer Decl. ¶ 9. And in no way could the proposed topics plausibly be viewed as having any connection to a money laundering investigation, even if the government had not already disclaimed any intention of adding new charges.

Thus, regardless of the government's intent when it issued the Partner-1 Subpoena *before* Mr. Chow's indictment had been returned, any argument at this late stage that Partner-1's testimony would be used for any purpose other than to secure trial proof simply cannot be squared with the available facts in the record. Partner-1's subpoena should therefore be quashed.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court (a) quash the Partner-1 Subpoena and (b) preclude the government from using at trial Partner-2's testimony and any evidence derivative of Partner-2's grand jury testimony or, at a minimum, order that the government provide for *in camera* review transcripts of Attorney-1's and Partner-2's grand jury

testimony.  Mr. Chow further respectfully requests that the Court adjourn the return date of the Partner-1 Subpoena while this motion is under consideration.

| Dated: | December 19, 2017<br>New York, New York | Respectfully submitted, |
|---|---|---|

/s/
George S. Canellos
Katherine R. Goldstein
Adam Fee
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, New York 10005-1413
Telephone: 212-530-5000
Facsimile: 212-530-5219
Email: gcanellos@milbank.com

*Counsel for Defendant Benjamin Chow*

.

## Appendix A

|  | Chow Indictment (returned 10/30/17)[5] | Partner-2 Subpoena (issued 11/3/17); (testified 11/7/17)[6] | Attorney-1 Subpoena (issued 10/26/17); (testified 10/30/17)[7] | Partner-1 Subpoena (issued 10/23/17); (testimony scheduled 12/20/17)[8] |
|---|---|---|---|---|
| 15 U.S.C. §§ 78j(b) & 78ff | X | X | X | X |
| 17 C.F.R. 240.10b-5 | X | X | X | X |
| 18 U.S.C. § 2 | X |  |  |  |
| 18 U.S.C. § 371 | X | X | X | X |
| 18 U.S.C. § 1341 |  | X | X | X |
| 18 U.S.C. § 1343 |  | X | X | X |
| 18 U.S.C. § 1348 | X | X | X | X |
| 18 U.S.C. § 1349 |  | X | X | X |
| 18 U.S.C. § 1519 |  | X |  |  |
| 18 U.S.C. §§ 1956, 1957 |  |  |  | X |

---

[5] *See* Ind., ECF No. 2.

[6] *See* Darmer Decl., Ex. C (Partner-2 Subpoena); Darmer Decl. ¶ 9.

[7] *See* Darmer Decl., Ex. B (Attorney-1 Subpoena); Darmer Decl. ¶ 6.

[8] *See* Darmer Decl., Ex. A (Partner-1 Subpoena); Darmer Decl. ¶ 10.