UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| -v.- : | 17 Cr. 667 (GHW) |
| BENJAMIN CHOW, : | |
|    a/k/a "Ben Chow Zhou Bin," | |
|    a/k/a "Benjamin Bin Chow," : | |
|    a/k/a "Bin Zhou," | |
| : | |
|         Defendant. | |
| : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GOVERNMENT'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTIONS *IN LIMINE***

                GEOFFREY S. BERMAN
                United States Attorney for the
                Southern District of New York
                Attorney for the United States
                    of America.

Elisha Kobre
Scott Hartman
Max Nicholas
Assistant United States Attorneys
   -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -v.- | : | 17 Cr. 667 (GSW) |
| BENJAMIN CHOW, <br>     a/k/a "Ben Chow Zhou Bin," <br>     a/k/a "Benjamin Bin Chow," <br>     a/k/a "Bin Zhou," | : <br><br> : | |
|          Defendant. | : <br> : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### GOVERNMENT'S REPLY MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTIONS *IN LIMINE*

The Government respectfully submits this reply memorandum of law in support of its motions *in limine* (Docket 55, "Gov't MIL") seeking rulings (1) admitting evidence that the defendant provided inside information to Michael Yin regarding at least one company other than Lattice in the context of a discussion about Yin's trading activity in that company; (2) precluding the defendant from offering evidence or making arguments about the SEC's enforcement decisions in the civil case that it brought in parallel to this criminal prosecution; and (3) precluding the defendant from offering analyst and other reports that post-date the announcement of Lattice's acquisition.

In the defendant's opposition to the Government's motions *in limine* (Docket No. 60, "Def. Opp."), the defendant asks the Court to deny as premature motions (2) and (3) described above, also noting with respect to motion (2) that he has "no present intention to introduce the SEC's initial or amended complaints against Mr. Yin into evidence in his defense case-in-chief" (Def. Opp. at 11-13), making it likely that at least motion (2) will

prove to be moot.[1]  The Government rests on the arguments made in its initial memorandum with respect to motions (2) and (3), and would not object to the Court deferring its rulings on those motions until the conclusion of the Government's case-in-chief.

The Government addresses here the defendant's arguments in opposition to the Government's motion to admit evidence that the defendant provided inside information to Michael Yin about Cypress Semiconductor Corporation (the "Cypress Evidence," described at pages 3-4 of the Gov't MIL), in the context of a discussion about Yin's trading activity in that company.  This evidence is admissible for the reasons stated in the Government's initial memorandum, and the defendant's arguments to the contrary are without merit.

## ARGUMENT

The defendant's arguments in opposition to the admission of the Cypress Evidence all proceed from the faulty premise that "[u]nless the government can point to competent proof that the Cypress Evidence was material and non-public and disclosed in breach of a duty, it is not admissible as either direct or 'other acts evidence." (Def. Opp. at 3.)  In other words, the defendant takes the position that the Cypress Evidence must itself constitute a crime (the crime of insider trading) in order to be admissible as direct evidence of the charged insider trading scheme or as other acts evidence admissible under Rule 404(b).  But that position has no legal basis, and would contradict the plain language of Rule 404(b), which explicitly contemplates the admission of non-criminal other acts: "Evidence of a crime, wrong, *or other act* . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" (emphasis added).  Courts have squarely rejected the defendant's asserted premise that other acts

---

[1] The Government understands this representation by the defense to mean that they do not intend to offer any evidence, make any argument, or ask any witness – either on direct or cross – about who the SEC charged or did not charge and why.  In the event that the defense's representation does not extend this far, the Government respectfully asks the Court to decide motion (2) as such evidence or argument is clearly forbidden.

2

evidence must itself be criminal in order to be admissible under Rule 404(b). *See, e.g., United States v. Devin*, 918 F.2d 280, 286 (1st Cir. 1990) ("Rule 404(b) reaches conduct which is neither criminal nor unlawful so long as the conduct is probative of, and revelatory as to, a permitted purpose.") (collecting cases). The defendant's premise that the Cypress Evidence must itself be criminal in order to be admissible is even less tenable as an argument against its admissibility as direct evidence, for it is plainly not the case that every piece of evidence the Government offers must prove a crime all by itself. *See, e.g.*, *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (defining "very low standard" for relevance as "'[having] any tendency to make a fact or less probable than it would be without the evidence'") (quoting Federal Rule of Evidence 401).

      The defendant's arguments against the admission of the Cypress Evidence all flow from his mistaken premise that the Cypress Evidence itself must be criminal. For example, the defendant asserts that the Government has failed to make allegations about Cypress's confidentiality policies, about whether information concerning the absence of merger activity was viewed by Cypress as confidential or material, or about whether the disclosure of such information was a breach of any duty. (Def. Opp. at 3-4.) These assertions are all beside the point, because they are aimed at a strawman, namely, the illegality or non-illegality of the defendant's disclosure of certain information about Cypress to Yin. The same is true of the defendant's assertions about how Cypress stood by its Executive Chairman during the course of a proxy battle, notwithstanding the Executive Chairman's disclosure of the information to Chow, who then relayed it to Yin. (Def. Opp. at 4-5.) Whether or not the defendant was "at liberty to disclose the information he received from the Executive Chairman [of Cypress]" to Yin (Def. Opp. at 6) does not drive the admissibility of the Cypress Evidence.

3

Rather, the issue is whether the Cypress Evidence has the tendency to make a fact of consequence in this case more or less probable. *See* Fed. R. Evid. 401.[2] At trial, the Government will have the burden of proving, among other things, that the defendant had a relationship with Yin of the type that he might give him a gift, understood that Yin was purchasing securities in the semiconductor sector, and expected that Yin would make trading decisions based on material, inside information that he provided to Yin. *See* Gov't MIL at 3-12 (citing cases). As explained in the Government's opening brief, it is certainly relevant to these inquiries that, during the time of the alleged criminal conduct, the defendant and Yin discussed Yin's active trading in the semiconductor space and the defendant shared with Yin inside information[3] regarding another semiconductor company, understanding that Yin would consider the information in making trading decisions. Specifically, the Cypress Evidence is admissible to prove, among other things, the relationship of mutual trust between the defendant and his co-conspirator, Yin; that the defendant understood and expected that

---

[2] Of course, the evidence also may not be offered to establish the defendant's bad character and conformity therewith. *See* Fed. R. Evid. 404(b). The defendant does not argue that the Cypress Evidence is being offered for propensity purposes, nor could he given his contention that it is not evidence of a crime.

[3] The defendant's brief does nothing to refute the argument that, apart from whether the Cypress Evidence constitutes a separate crime, it shows the defendant sharing with Yin information that the defendant *believed* to be valuable non-public information obtained from a Cypress insider. The fact that the Executive Chairman's statements to the defendant were later reprinted in a public filing nearly 10 months later says nothing about whether the information was public when the defendant shared it with Yin. Irrespective of whether the Executive Chairman was himself permitted to share the information that Cypress had no serious suitors, it can hardly be disputed that, at the time of the e-mail exchange and the subsequent chat between the defendant and Yin, the public information was that such a deal *might* be in the works. *See, e.g.*, Bob O'Brien, "Cypress' Buyout Prospects Strong Even After CEO Appointment," TheStreet.com (Aug. 12, 2016); (Yin to Chow on August 31, 2016 : "TPG Capital Said Willing to Pay Up to $15 Per Share to Acquire Cypress (CY) Do you think that would be possible?"). In this context, the Executive Chairman's affirmative statement that the public rumors were *false* was significant information that was available to the defendant (and thus to Yin), but not to the general public.

Yin would trade on information that the defendant gave him (*see* Gov't MIL at 4: "YIN: 'stay put and wait, right?' CHOW: 'Yes.'"); and that the defendant and Yin had this type of relationship, and were exchanging inside information about securities in the semiconductor sector, during the time of the charged conspiracy. *See, e.g.*, *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust.").

The defendant cites two cases to support his proposition that "evidence of lawful conduct is simply not probative of an illegal relationship or a criminal scheme." (Def. Opp. at 6.) Neither case stands for that proposition.[4] In *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1999), the *defendant* sought to offer evidence of prior asylum applications he had prepared that were not fraudulent, in order to show that the asylum applications at issue were also not fraudulent. The court held that the defendant could not disprove his fraudulent intent by introducing prior acts of honesty. That ruling has nothing to do with the circumstances here, in which the Government seeks to introduce evidence of the defendant passing information about Cypress to Yin with the expectation that Yin will base his trading decisions on that information, in order to prove that the defendant and Yin had a relationship of mutual trust and that the defendant understood that Yin traded in the semiconductor sector and would make trading decisions based on information the defendant gave him, among other things. The defendant's second case, *United States v. Nekritin*, No. 10 Cr. 491 (KAM), 2011 WL 2462744, at *5 (E.D.N.Y. June 17, 2011), is equally unavailing. There, the court granted

---

[4] The Government does not concede that the Cypress Evidence reflects "lawful conduct," but as discussed above, whether the defendant's passing of inside information about Cypress to Yin was lawful does not bear on the admissibility of evidence concerning that act. For this same reason, there is no danger of a mini-trial or undue waste of time with respect to whether the defendant's conduct in passing information about Cypress to Yin was lawful; the Government does not intend to prove all of the elements of insider trading with respect to that conduct and thus will not refer to that conduct as "insider trading" when addressing the jury. *See* Fed. R. Evid. 403.

5

the Government's motion to preclude healthcare fraud defendants from offering evidence that portions of their healthcare practice were legitimate. The court reasoned that "a defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions." *Nekritin*, 2011 WL 2462744, at *5. That holding has no application to this case at all.

The defendant also asserts that evidence similar to the Cypress Evidence was precluded in two insider trading cases: *United States v. Rengan Rajaratnam*, 2014 WL 2696568 (S.D.N.Y. June 10, 2014) and *United States v. Martoma*, 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014). (*See* Def. Opp. at 8.) Those decisions, which in any event would not bind the Court here, are inapposite. In *Rajaratnam*, the Government sought to introduce evidence that the defendant had traded in Akamai Technologies, Inc. ("Akamai") after receiving inside information about Akamai from his brother and co-conspirator, Raj Rajaratnam. *Rajaratnam*, 2014 WL 2696568, at *1. Judge Buchwald found that it was "speculative" and "tenuous" that the defendant even received the information at issue from his brother, *id.* at **1-2, and found that "concrete facts" offered by the defendant undermined the Government's inference that the defendant possessed and traded on the information, *id.* at *2. In light of this "scant" support, Judge Buchwald found that the evidence proffered by the Government would be irrelevant or at least substantially outweighed by the risk of prejudice. *Id.* at **3-4. Judge Buchwald also held that – in a case where the defendant and the co-conspirator from whom he received inside information were brothers, and in which the Government had wiretap evidence – the proffered evidence would not help elucidate the relationship between co-conspirators because it would be "cumulative." *Id.* at *4.

Judge Buchwald's reasoning in *Rajaratnam* does not map onto this case. Here, unlike in *Rajaratnam*, it cannot be disputed that the defendant possessed information about Cypress, that he passed it to Yin, and that he expected Yin to make a trading decision based on it. (*See*

6

Gov't MIL at 3-4 (quoting WeChat exchange between the defendant and Yin about Cypress).) Thus the foundation of the decision in *Rajaratnam* – the tenuousness of the evidence that the defendant even possessed the information at issue, let alone traded on it – is entirely absent here. Of equal importance, Judge Buchwald's finding that evidence of the relationship between co-conspirators would be "cumulative" in *Rajaratnam*, where the defendant and the person tipping him information were brothers and where the Government had wiretap evidence, could not be made in this case. Based on statements by defense counsel, the Government expects the closeness and contours of the relationship between the defendant and Yin to be a contested issue at trial. *Cf. United States v. Araujo*, 79 F.3d 7, 8 (2d Cir. 1996) (affirming district court's admission of other acts evidence to prove the nature of the relationship between defendant and co-conspirators, and noting that without explanation of a connection between defendant and co-conspirator, a particular defense would have been stronger).

The decision in *Martoma*, on which the defendant also seeks to rely, is even more attenuated. In *Martoma*, the Government sought to introduce evidence that co-conspirators provided the defendant with inside information regarding the clinical trials of certain drugs (other than the drug that was the subject of the charged insider trading scheme). 2014 WL 31191 at *1. However, the Government did not contend that it was ever contemplated that the information would be traded on. *Id.* Nor did the Government contend that the information was material or that it was non-public. *Id.* In those circumstances, Judge Gardephe found that the proffered evidence was neither admissible as direct proof of the charged conspiracy nor as Rule 404(b) evidence. In this case, by contrast, there can be no question that when the defendant passed information to Yin about Cypress, it was in the context of Yin's trading decisions. (*See* Gov't MIL at 3-4.) Indeed, after the defendant passed along to Yin what the Executive Chairman at Cypress had told the defendant about the

7

chances of a merger, Yin expressly asked the defendant if it would be better not to trade in Cypress ("stay put and wait, right?") and the defendant provided him advice on this investment decision ("Yes. It is on the right path to grow anyway."). The premise for Judge Gardephe's decision in *Martoma* – that the information at issue there was already public and was not provided in contemplation of making a trading decision – simply does not pertain here.

      The defendant makes a backup argument that the Cypress Evidence, even if relevant, should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the risk of unfair prejudice and juror confusion. (Def. Opp. at 9-11.) This argument should be rejected. There is no risk of undue delay stemming from a mini-trial of whether the defendant's passing of information about Cypress to Yin was illegal, because the Government is not seeking to prove or argue to the jury that this conduct actually constituted an instance of insider trading. Moreover, a limiting instruction can be given to ensure that no misimpression arises. *Cf. United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011) (affirming district court's admission of defendant's preparation of a false tax return to show knowledge and intent, where court gave limiting instruction); *United States v. Guang*, 511 F.3d 110, 121 (2d Cir. 2007) (affirming district court's admission of other acts evidence "to demonstrate the existence of a relationship of mutual trust," among other things, where the district court gave limiting instruction). Nor will the defendant be prejudiced by the fact that the jury will hear about his passing information to Yin about Cypress, as this conduct is no more inflammatory, and in fact is less inflammatory, than the evidence the jury will hear about the defendant's passing information to Yin about Lattice. *See, e.g.*, *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) ("[T]he other acts were not unfairly prejudicial as they were no more sensational or disturbing than the crimes with which [the defendant] was charged."). The Cypress Evidence is not unfairly prejudicial to the defendant.

## CONCLUSION

The Government respectfully submits that the Court should grant the Government's motions *in limine*.

Dated: New York, New York
       February 27, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:   /s/
Elisha Kobre
Scott Hartman
Max Nicholas
Assistant United States Attorneys
Tel.: (212) 637-2599/2357/1565