# MILBANK, TWEED, HADLEY & MᶜCLOY LLP

**28 LIBERTY STREET**
**NEW YORK, N.Y. 10005-1413**

George S. Canellos
Partner
DIRECT DIAL NUMBER
+1 (212) 530-5792
E-MAIL: GCanellos@milbank.com:

## March 5, 2018

**VIA ECF**

Honorable Gregory H. Woods
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

     Re:    *United States v. Benjamin Chow*, 17 Cr. 667 (GHW)

Dear Judge Woods:

On behalf of defendant Benjamin Chow in the above-referenced action, we write to supplement the information contained in the parties' proposed Joint Requests To Charge ("RTC"). Our purpose is to summarize the key distinctions between the government's proposed instructions and those of the defense and to highlight the critical reasons why we believe that certain language proposed by the government misstates and unfairly presents the law of insider trading applicable to this case.

### 1.    Insider Trading Under Title 15 (Counts Two through Thirteen)

As the Court knows, the law of insider trading is in a state of flux, as the Second Circuit and the Supreme Court have refashioned certain elements of the offense three times in the last three years. A key opinion—the panel's divided decision in *United States v. Martoma*, 869 F.3d 58 (2d Cir. 2017)—remains under review by the Circuit. Moreover, to our knowledge, this is the first criminal insider trading case based exclusively on alleged breach of contractual language in a nondisclosure agreement between two arms-length counterparties, rather than breach of a fiduciary relationship founded on the common law.[1] Thus, there is no set of jury instructions that has been crafted for allegations comparable to those in our case, much less approved by the Court of Appeals.

In support of its duty theory, we understand the government to be focused on a single sentence on the second page of the non-disclosure agreements between China Reform/Canyon Bridge and Lattice Semiconductor Corporation. This sentence recites that "[t]he fact of the exploration and evaluation of a potential strategic relationship between the Parties shall be deemed 'Confidential' and subject to the protections of this Agreement as Proprietary Information." (*See*

---

[1]    The government has informed this Court and Mr. Chow that it no longer intends to argue that "the charged conduct violated duties that [Mr. Chow] owed to Canyon Bridge or China Reform." (Gov't MIL Response at 1, ECF No. 58.)

Hon. Gregory H. Woods
March 5, 2018
Page 2

Exhibit A at 2.)  The scope of this sentence was subject to various precisely crafted exceptions and carve outs.   For example, another provision of the agreement clarifies that "'Proprietary Information' does not include information "[a]lready known to or otherwise in the possession of the receiving Party at the time of receipt thereof by the receiving Party from the disclosing Party; or independently developed by the receiving Party without use of or reference to the Proprietary Information." (*See id.* at 2.)  Another one expressly authorizes the disclosure of "Proprietary Information" to various parties, including "agents" and "advisors" "who have a 'need to know' such information in connection with the evaluation, negotiation, pursuit or effectuation of the potential strategic transaction."  (*Id.*)

Given the acknowledged elements of the government's charged theory of fraud, we have crafted jury instructions that properly and accurately convey the law applicable to this case.  A clean version of our proposed instruction for the first element of the securities fraud counts is attached hereto as Exhibit B.

*First*, we have based our instructions on the principles of the misappropriation theory set forth in *United States v. O'Hagan*, 521 U.S. 642 (1997), and *Carpenter v. United States*, 484 U.S. 19 (1987), and generally employ language drawn directly from these cases and their progeny.  For example, we define the crime in terms drawn almost verbatim from *O'Hagan* as comparable to "embezzlement" and involving the betrayal of trust that occurs "when someone is entrusted with valuable information that belongs to another person or entity" and then misappropriates "the information for his own benefit or by giving it to a third person whom he wants to benefit."  *See* RTC at 18; *cf. O'Hagan*, 521 U.S. at 652 (under the misappropriation theory, "a fiduciary's undisclosed, self-serving use of a principal's information to purchase or sell securities, in breach of a duty of loyalty and confidentiality, defrauds the principal of the exclusive use of that information[]"); *id.* at 654 (misappropriation "constitutes fraud akin to embezzlement[]"); *Carpenter*, 484 U.S. at 27 ("The concept of 'fraud' includes the act of embezzlement, which is 'the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another.'") (quoting *Grin v. Shine*, 187 U.S. 181, 189 (1902)).

*Second*, we have tailored the instruction to the charged theory of fraud in this case.  For example, we added to the government's proposed charge language that makes clear that the jury may find that a duty of trust and confidence can arise from an agreement between counterparties to keep certain information confidential but "only as to the specific information covered by the parties' agreement."  (*See* Exhibit B at 4.)  In other words, we ask the Court to convey to the jury the obviously critical point that Mr. Chow cannot be held liable—criminally or otherwise—for breaching a nondisclosure agreement unless he disclosed information ***that he was actually prohibited from disclosing***.  We do not understand on what basis the government could possibly object to such an instruction or how such an instruction could properly be omitted in a case charging breach of a non-disclosure agreement.

Similarly, we ask the Court to convey the bedrock principle of insider trading law in the United States that there is no general duty to refrain from using or trading on the basis of material

Hon. Gregory H. Woods
March 5, 2018
Page 3

non-public information, including one's own information, absent a duty of trust and confidence.[2] Specifically, we ask the Court to instruct the jury that, "[a]bsent a duty of trust and confidence, a person is generally free to use or disclose for his own benefit any information—including, without limitation, information about his own intentions, plans, goals, investments, location, or business interests or those of his investment firm, information that he receives from other sources, or information that is outside the scope of a duty of trust and confidence."  *See* Exhibit B at 5.  And, tailoring this principle to the allegations of this case, we request that the Court tell the jury that it may find breach only if it finds that "the information provided to Mr. Yin was obtained by the defendant from Lattice under a duty of trust and confidence, and not from other sources, such as his own personal matters, his investment firm, or third parties."  (*See* Exhibit B at 6.)

By contrast, the government's proposed instructions are drawn from classical cases involving "insiders" who owe fiduciary duties to company shareholders.  The government's proposed instructions do not acknowledge that this is a misappropriation case involving an "outsider" bound by no duties to Lattice other than those that might arise by specific agreement. Indeed, Mr. Chow was directly opposed to Lattice in a potential transaction and owed no fiduciary duties to Lattice or its shareholders.  The government's references to an "insider" and to a "relationship of trust and confidence" are therefore in error and misleading to the jury.

Similarly erroneous is the government's refusal to accept an instruction that it must prove that Mr. Chow intended to deceive ***Lattice***, the source of the alleged information at issue.  Given that the government is not pursuing a claim that Mr. Chow violated duties to the firms for which he worked (Canyon Bridge or China Reform), (*see* Gov't MIL Response at 1, ECF No. 58), the one and only form of deception upon which liability can rest in this case is that Mr. Chow intended to deceive Lattice.  *See O'Hagan*, 521 U.S. at 652-53 (the misappropriation theory "outlaws trading on the basis of nonpublic information by a corporate 'outsider' in breach of a duty owed … to the source of the information."); *S.E.C. v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012) ("'Abstain or disclose' has equal force in the misappropriation context, but the disclosure component operates somewhat differently.  Because the misappropriation theory is based on a fiduciary duty to the source of the information, only disclosure to the source prevents deception; disclosure to other

---

[2]     *Chiarella v. United States*, 445 U.S. 222, 233 (1980) ("We cannot affirm petitioner's conviction without recognizing a general duty between all participants in market transactions to forgo actions based on material, nonpublic information.  Formulation of such a broad duty, which departs radically from the established doctrine that duty arises from a specific relationship between two parties … should not be undertaken absent some explicit evidence of congressional intent."); *id.* at 235 ("We hold that a duty to disclose under § 10(b) does not arise from the mere possession of nonpublic market information.  The contrary result is without support in the legislative history of § 10(b) and would be inconsistent with the careful plan that Congress has enacted for regulation of the securities markets."); *see also Dirks v. S.E.C.*, 463 U.S. 646, 647 (1983) ("A duty to disclose or abstain does not arise from the mere possession of nonpublic market information.  Such a duty arises rather from the existence of a fiduciary relationship. There must also be 'manipulation or deception' to bring a breach of fiduciary duty in connection with a securities transaction within the ambit of Rule 10b–5.") (citation omitted).

Hon. Gregory H. Woods
March 5, 2018
Page 4

traders in the securities market cannot cure the fiduciary's breach of loyalty to his principal."). Accordingly, Mr. Chow is entitled to a clear instruction that the government must prove that he intended to deceive Lattice.

Most troublingly, the government's proposed instructions concerning the general subject of breach of duty and deception largely ignore the non-disclosure agreements—which are the only source of breach/deception alleged in this case. In summarizing these elements, the government proposes for the Court to tell the jury that it must find: (1) that "the defendant owed a duty of trust and confidence to Lattice" (RTC at 19); and (2) that "the defendant violated his duty or duties of trust and confidence by disclosing material, non-public information about Lattice to Michael Yin," (*id.*). Then the government proposes that the Court explain these elements as follows:

> In order to answer the first question, concerning the existence of a relationship of trust and confidence, you must look to all of the facts and circumstances and ask whether the defendant had a relationship of trust and confidence with Lattice. With respect to this issue, I instruct you as a matter of law that an express agreement to keep certain information confidential can give rise to a duty of trust and confidence between the parties to that agreement.

(*Id.*)

We respectfully submit that these proposed instructions are misleading and erroneous both when assessed in isolation and taken as whole. First, they vaguely and erroneously convey that the jury could infer the existence of a "relationship of trust and confidence" from "all the facts and circumstances" and not just from the non-disclosure agreements alleged in the case. Second, it is not correct that "an express agreement to keep certain information confidential gives rise to a duty of trust and confidence between the parties to that agreement." This language improperly suggests that such a duty would be unbounded when, in fact, the duty extends only to ***the specific information covered by the agreement***. This misleading impression is compounded by the government's erroneous request that the jury focus on whether Mr. Chow violated "his duty or duties of trust and confidence" by disclosing material, nonpublic information "about Lattice." *Id.* Given that the nondisclosure agreements impose no unqualified duty to refrain from disclosures "about Lattice," the operative question is not whether the defendant disclosed information "about Lattice" but whether he disclosed information subject to the restrictions contained in the agreements.

Taken as a whole, the government's proposed instructions convey that an agreement to keep ***any*** information confidential could establish a general "relationship" of trust and confidence and thereby trigger an obligation on the part of the defendant to keep ***all*** information ***about*** Lattice confidential—even if the information in question originated from sources other than Lattice and/or were not covered by the terms of the operative non-disclosure agreements. That is not the law. And even if the government's proposed instructions were accurate at some level of abstraction or generality, they nonetheless would be improper since they are untethered to the allegations in this

Hon. Gregory H. Woods
March 5, 2018
Page 5

case and pose a serious risk that the defendant will be convicted on a theory of the case different from the charged theory. *See United States v. McCarthy*, 271 F.3d 387, 397 (2d Cir. 2001) ("[T]he district court must tailor its instructions to the facts of the case before it.") (quoting *United States v. Regan*, 397 F.2d 823, 828 (2d Cir. 1991)), *abrogated on other grounds by Eberhart v. United States*, 546 U.S. 12 (2005); *United States v. Lucarelli*, 476 F. Supp. 2d 163, 169 n.5 (D. Conn. 2007) ("This case is an example of how generalized language from case law and standardized model charges, absent adequate tailoring, may be insufficient in novel or otherwise unusual cases[ ] . . . .").

*Finally*, we respectfully submit that our personal benefit instruction comports with the Second Circuit's most recent pronouncement of the law, which is that the tipper personally benefits "whenever the information was disclosed with the expectation that the recipient would trade on it," and "the disclosure resembles trading by the tipper followed by a gift of the profits to the recipient." *United States v. Martoma*, 869 F.3d 58, 70 (2d Cir. 2017) (internal citations and quotations omitted); *see also Dirks*, 463 U.S. at 663–64 (personal benefit includes "a pecuniary gain," "a reputational benefit that will translate into future earnings," "a relationship between the insider and the recipient that suggests a *quid pro quo* from the latter," "an intention to benefit the particular recipient," and "when an insider makes a gift of confidential information to a trading relative or friend."). Notably, the *Martoma* majority, in formulating the new standard that it sought to adopt in the Second Circuit, emphasized at least three times that tipper liability requires more than merely an expectation on the part of the tipper that the recipient will trade but also that the disclosure "resembles trading by the insider followed by gift of the profits to the recipient." *Martoma*, 869 F.3d at 69–72. Assuming that *Martoma* is not reversed or modified on rehearing, therefore, we believe that a proper instruction in the Second Circuit must convey both elements of the *Martoma* standard.[3]

## 2.    Insider Trading Under Title 18 (Count Fourteen)

In Count Fourteen, the government has charged Mr. Chow with insider trading under the misappropriation theory not pursuant to the well-established mail or wire fraud statutes of Title 18 but in violation of the rarely-used objective, consequential, and securities fraud statute. *See* 18 U.S.C. § 1348. As a result, there is no pattern jury instruction in this Circuit, and no Court of Appeals decision approving a Section 1348 charge in the insider trading context, to consult for guidance. Rather, the government has drawn its instruction from two out-of-Circuit cases, one of which was not even an insider trading

---

[3]    *Martoma* disapproved of the language in *United States v. Newman*, 773 F.3d 438, 452 (2d Cir. 2014), which required the government to prove, in the gift-giving context of the personal benefit test, the existence of a "meaningfully close personal relationship" between tipper and tippee that "generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *See Martoma*, 869 F.3d at 69 (citation omitted). Accordingly, while we recognize that *Newman*'s personal benefit standard is not consistent with the law as articulated by *Martoma*, we request a personal benefit instruction consistent with *Newman* to enable us to preserve this argument on appeal.

Hon. Gregory H. Woods
March 5, 2018
Page 6

case, and the other of which cannot be reconciled with settled law or the government's own position in a subsequent case within the same district and in myriad cases within this District. The government's proposed instruction is therefore not only unapproved, but also, because it disclaims the predicates of insider trading liability, runs directly contrary to longstanding misappropriation precedent.

In its stead, we have proposed an instruction that comports with Supreme Court and Circuit precedent, and is consistent with the practice in this District. A clean version of our proposed Title 18 charge is attached hereto as Exhibit C.

> **A.** **Insider Trading Offenses Require Proof Of The Same Essential Elements Whether Charged Under Title 15 or Title 18**

While typically charged under Title 15, the Supreme Court has also sanctioned charging insider trading under Title 18's mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.[4]  *See Carpenter*, 484 U.S. at 322. The misappropriation theory of insider trading was first endorsed by the Supreme Court in *Carpenter* in the context of mail and wire fraud charges.[5]  In *Carpenter*, the Court held that the defendant, a columnist at the Wall Street Journal, misappropriated "prepublication information" from his "On the Street" column, which conduct constituted "the fraudulent appropriation to one's own use of the money or goods entrusted to one's care by another[,]" and thus violated the mail and wire fraud statutes. 484 U.S. 19, 27–28 (1987).  Essential to the Court's holding was that the defendant had feigned loyalty to his employer and "appropriat[ed] its confidential business information *for his own use*, all the while pretending to perform his duty of safeguarding it." *Id*. at 28 (emphasis added).

Ten years later, in *O'Hagan*, the Supreme Court endorsed *Carpenter*'s formulation of misappropriation theory in the context of insider trading under Section 10(b). Acknowledging that the conduct it had addressed in *Carpenter* was "fraud of the same species," the Court agreed with the government that "*Carpenter*'s discussion of the fraudulent misuse of confidential information . . . 'is a particularly apt source of guidance here, because [the mail fraud statute] (like Section 10(b)) has long been held to *require deception, not merely the breach of a fiduciary duty*.'"  521

---

[4]     It is axiomatic that "[b]ecause the mail fraud and the wire fraud statutes use the same relevant language," courts "analyze them the same way." *United States v. Schwartz*, 924 F.2d 410, 416 (2d Cir. 1991). The "essential elements" of both mail and wire fraud are "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) (quoting *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004)). Unlike Title 15, mail and wire fraud additionally require that "the government . . ., at a minimum, prove that defendants contemplated some actual harm or injury to their victims." *Id*. (quoting *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006)).

[5]     The Court split evenly on the separate question whether, under the securities laws, Carpenter's conviction could stand where the alleged victim (the newspaper) had no interest in the securities traded. 484 U.S. at 24.

Hon. Gregory H. Woods
March 5, 2018
Page 7

U.S. at 654 (citing the Gov'ts Brief at 18 n.9) (emphasis added). For the same reasons that the Court in *Carpenter* held misappropriation to be illegal under Title 18—namely, that it amounted to a fiduciary's undisclosed, self-serving use of the principal's information to purchase securities — the Court found it actionable under Title 15. *Id.* at 652.

This understanding has been repeatedly articulated by the Second Circuit and its sister Circuits, and was recently affirmed by the Supreme Court in *Salman*. *See Salman v. United States*, 137 S. Ct. 420, 423 (2016); *see also Obus*, 693 F.3d at 284 (the misappropriation theory "targets persons who are not corporate insiders but to whom *material non-public information* has been entrusted in confidence and who *breach a fiduciary duty* to the source of the information to gain *personal profit* in the securities market.") (citing *O'Hagan*, 521 U.S. at 652 (1997), and *United States v. Chestman*, 947 F.2d 551, 566 (2d Cir. 1991)) (emphasis added); *SEC v. Yun*, 327 F.3d 1263, 1277–78 (11th Cir. 2003) ("[W]e find it appropriate to require the SEC to show that a misappropriating outsider expected to benefit from the disclosure. Mere disclosure by itself is insufficient to constitute a breach."); *cf Chestman*, 947 F.2d at 571 (reversing Title 15 and Title 18 convictions and noting "[t]he fortunes of Chestman's mail fraud convictions are tied closely to his securities fraud convictions[,]" which "the government concedes[] were based on the same theory . . . .") (quotation marks omitted).

Taken together, *Dirks*, *O'Hagan*, and *Carpenter* require that fraudulent conduct in the misappropriation context, whether charged under Title 15 or under the mail and wire fraud statutes of Title 18, have the same essential ingredients—the defendant's misuse of corporate property for personal benefit in violation of a fiduciary duty. Unauthorized disclosure of confidential information does not suffice. This makes perfect sense. The principles underlying the misappropriation theory are derived from the common law and carry through all iterations of misappropriation — *i.e.*, embezzlement—whether charged as securities fraud or mail and wire fraud (or securities fraud under § 1348). The government aptly summarized this point in its brief to the Supreme Court in *Salman*:

> The rule that an insider violates his fiduciary duty under *Dirks* by disclosing information for the non-corporate purpose of enabling the tippee to trade — and thus profit at the expense of the shareholders (or the source of the information) — accords with the common law. *See, e.g.*, 463 U.S. at 653 n.10, 660 n.20 (drawing on agency law and corporate law); *O'Hagan*, 521 U.S. at 653 (agency law and embezzlement law); *Chiarella*, 445 U.S. at 227-228 & n.10 (corporate law and other common law) . . . . Similarly, in the law of embezzlement — which this Court has closely analogized to insider-trading law, *see O'Hagan*, 521 U.S. at 653-654 — a person may not "appropriat[e] to [his] own use" money or property that has been "entrusted" to him by another, *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (quoting *Grin v. Shine*, 187 U.S. 181, 189 (1902)). That conduct remains unlawful even if the person who takes the property for his own use fails to retain it for himself or to realize any profit from it. *See, e.g., Republic of Iraq v. ABB AG*, 768 F.3d 145, 166 (2d Cir. 2014) (embezzlement occurs "where the insider's

Hon. Gregory H. Woods
March 5, 2018
Page 8

> misconduct benefits only himself or a third party"), *cert. denied*, 135 S. Ct. 2836 (2015). ***The critical factor is the embezzler's use of the property — here, confidential information — not for the purposes for which it was entrusted, but for the person's own purposes***.[6]

Gov't Br., *Salman*, 2016 WL 4088380, at *21–23 (emphasis added).

And in *all* of the recent insider trading cases charged under the mail and wire fraud statutes in this District, the court (with the government's imprimatur) has instructed the jury that the same core elements of Title 15—including duty, breach, and personal benefit—apply to the charges under Title 18.[7]  *See e.g.*, Proposed Joint Reqs. to Charge at 31-32 and n.23, *United States v. Walters*, No. 16 Cr. 338 (PKC) (S.D.N.Y. Feb. 6, 2017), ECF No. 91 (citing Tr. of Jury Charge at 41–42, *United States v. Stewart*, No. 15 Cr. 287 (LTS) (S.D.N.Y. Aug. 12, 2016), ECF No. 174, and acknowledging that "the charged wire fraud scheme thus tracks the components of the securities fraud scheme," and that, under *Carpenter*, wire fraud based on misappropriation requires "(i) a breach of a duty of confidentiality and misappropriation of confidential business information, (ii) for the tipper's personal benefit and his 'own use,' and (iii) to make money through securities trading."); Tr. of Jury Charge at 2961-62, *Walters*, No. 16 Cr. 338 (PKC); Jury Charge at 42, *Stewart*, No. 15-Cr. 287) (LTS); Jury Charge at 15, *United States v. Fleishman*, 11 Cr. 32 (JSR) (S.D.N.Y. Sept. 21, 2011), ECF No. 129.

### B. Schemes To Defraud Require Proof Of The Same Essential Elements Whether Charged Under Sections 1341, 1343 or 1348

Rather than adopt this long-standing line of precedent, the government has proposed a Section 1348 charge that departs both from every charge delivered under similar circumstances in this District and the clear import of Supreme Court and Second Circuit precedent.  The government's proposed charge, however, finds no support in the statute's text and is belied by the legislative history.

---

[6]    The government's brief in *Salman* was signed by attorneys from both the SEC, including its General Counsel, Deputy General Counsel, and Solicitor, and the DOJ, including the Acting Solicitor General, Assistant Attorney General, and Deputy Solicitor General.  Br. for the United States, *Salman v. United States*, No. 15-628, 2016 WL 4088380 (Aug. 1, 2016).

[7]    Indeed, every other court that has addressed misappropriation in the mail or wire fraud context has cited allegations or evidence satisfying the core elements of *Dirks*, *O'Hagan*, and *Carpenter*, including duty, breach, and personal benefit.  *See, e.g.*, *United States v. Cherif*, 943 F.2d 692, 694–95 (7th Cir. 1991) (affirming mail and wire fraud convictions where former bank employee trespassed on bank's property, stole information about proposed deals, and traded in a personal brokerage account on the basis of that information); *United States v. Willis*, 737 F. Supp. 269, 275–76 (S.D.N.Y. 1990) (denying motion to dismiss mail fraud charge where psychiatrist traded for personal profit on information misappropriated from patient).

Hon. Gregory H. Woods
March 5, 2018
Page 9

Section 1348 was enacted in 2002, in the wake of the Enron accounting fraud scandals. *See* The Corporate and Criminal Fraud Accountability Act of 2002, S. Rep. 107-146, 2002 WL 863249, at *2; *id.* at *6 (May 6, 2002). It was built on the same chassis as Sections 10(b) and 1341 and 1343. Similar to Section 10(b), which prohibits the use of any "device, scheme or artifice to defraud" in connection with "the purchase and sale of any security," 17 C.F.R. § 240.10b-5(a), Section 1348, in pertinent part, makes it a crime to "knowingly execute [], or attempt[] to execute, a scheme or artifice" to (1) "defraud any person in connection with" the securities of a publicly traded company; or (2) "obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of" the securities of a publicly traded company. Every court that has considered the issue has observed or held that, because Section 1348 was consciously modeled on the mail and wire fraud statutes, it should be interpreted based on precedents construing those statutes.[8]

Section 1348 was meant to address the perceived inability of Title 15 to capture Enron-like accounting schemes, and was not at all targeted at insider trading. *See* 2002 WL 863249, at *2 (describing Section 1348's origins in "the aftermath of Enron's collapse and . . . cover up" and "shortcomings in current law that the Enron matter has publicly exposed"). With its enactment, Congress sought to remove obstacles for prosecutors in proving financial-statement fraud by eliminating the government's burden to prove that defendants violated specific accounting and reporting rules or that the fraud was committed in connection with the purchase or sale of a security, and by providing greater penalties for such violations.[9] But it did not purport to alter the elements of insider trading liability premised on a scheme to defraud, as is liability under Section 10(b), Sections 1341, 1343 **and** Section 1348. Thus, as *Dirks*, *Carpenter*, and *O'Hagan* teach, the government must prove under Section 1348—as it must under Sections 10(b) and the mail and wire fraud statutes—the elements set forth in *Carpenter* and *O'Hagan*, including the existence of

---

[8]    *See, e.g., United States v. Coscia*, 866 F.3d 782, 799 (7th Cir. 2017) ("Because section 1348 was modeled on the federal mail and wire fraud statutes, the district court certainly was on solid ground in looking to the pattern jury instruction for those offenses.*"), reh'g and suggestion for reh'g en banc denied* (Sept. 5, 2017); *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *9 n.6 (S.D.N.Y. Jan. 18, 2017) ("Several courts have recognized that 'because the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes,' an analysis of Section 1348 'should be guided by the caselaw construing those statutes.'"); *United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009) (explaining that "the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes, [and that] the Court's analysis should be guided by the caselaw construing those statutes") (internal quotations omitted).

[9]    *See* Tom Hanusik, Sarbanes-Oxley: Broader Statutes — Bigger Penalties, United States Attorneys' Bulletin,       Vol.       51,       No.       3       at       11,       13-14       (May       2003), ttps://www.justice.gov/sites/default/files/usao/legacy/2006/02/14/usab5103.pdf. ("the new statute is less technical than the reporting and accounting provisions under the Exchange Act," "omits the '34 Act requirement that the fraud scheme occur 'in connection with the purchase or sale' or a security," and "increases the statutory maximum for securities fraud").

Hon. Gregory H. Woods
March 5, 2018
Page 10

a duty, a breach and personal benefit all necessary to show the requisite deception, and not merely the unauthorized disclosure of confidential information.

### C.    The Cases Cited By The Government Are Distinguishable

In support of its proposed Title 18 charge, the government tellingly cites only to instructions from two cases out of the Northern District of Georgia — *United States v. Harris*, No. 09 Cr. 406 (N.D. Ga.) and *United States v. Slawson*, No. 14 Cr. 16 (N.D. Ga.).  Both cases on which the government relies are unpersuasive.

*Harris* is a particularly odd choice, as it was a fraudulent disclosure case, rather than an insider trading case.  In *Harris*, the defendants were executives of a publicly traded holdings company who were alleged to have issued press releases and public filings substantially overstating the company's assets and income to inflate the share price and reap the profits.  See Indictment, *Harris*, No. 09 Cr. 406, ECF No. 1.  The underlying facts of *Harris* render it irrelevant to an insider trading prosecution.

*Slawson* and its follow-on case, *United States v. Melvin*, No. 14 Cr. 22 (N.D. Ga.) (on which the government has not relied), are wholly distinguishable.  In both classical insider trading cases tried post-*Newman*, the government charged downstream tippees with only Title 18 violations, and no Title 15 charges.  Pertinent here are the revealing positions taken by the parties and courts in connection with the jury instructions on the substantive Section 1348 counts.

In *Newman*'s wake, the government in *Slawson* moved preemptively for a jury instruction devoid of all of the core elements of insider trading liability under both Sections 10(b) and 1343. Gov't Mot. for Pretrial Ruling on Offense Instructions, *Slawson*, No. 14 Cr. 16, ECF No. 54.  The government made no secret that it was acutely aware of, and seeking to avoid, the heavy burden imposed by *Newman*.  In so doing, the government took the following legally unsound position:

> Applying *Carpenter* to the charges pending against him, the government is not required under Section 1348(1) to prove . . . a breach of fiduciary duty.  And the government is not required to prove any particular *quid pro quo* or payment to the insiders, only that the Defendant understood that he was participating in or inducing an embezzlement of confidential information from [his employer].

*Id.* at 12–13.  This argument is manifestly wrong.  It flies in the face of *O'Hagan*, which, relying on *Carpenter*, defined misappropriation in the Section 10(b) context to include precisely the elements of breach and benefit.  And it runs directly contrary to the express position taken by the United States Attorney's Office for the Southern District of New York in previous cases.  *See supra* at 8 (citing Proposed Joint Requests to Charge at 31-32 and n.23, *Walters* (citing Jury Charge at 42, *Stewart*, and acknowledging that "the charged wire fraud scheme thus tracks the components of the securities fraud scheme," and that, under *Carpenter*, wire fraud based on misappropriation requires "(i) a breach of a duty of confidentiality and misappropriation of confidential business information, (ii) for the tipper's personal benefit and his 'own use,' and (iii) to make money

Hon. Gregory H. Woods
March 5, 2018
Page 11

through securities trading."); Tr. of Jury Charge at 2961-62, *Walters*; Jury Charge at 42, *Stewart*; Jury Charge at 15, *Fleishman*.

That likely explains why, just a few months later, the *Slawson* prosecutor's office abandoned this position in *Melvin*. In its proposed charge, the government offered a much more traditional *Carpenter*-style instruction, which was ultimately largely adopted by the court, requiring that the tippee knew that the tipper had "misappropriated **material non-public information** . . . from his client . . . . **for his own use and in violation of his duty of trust and confidence to his client** . . . ." Transcript of Jury Charge at 492, *Melvin*, No. 14 Cr. 22, ECF No. 209 (emphasis added). While the government here attempts to ignore *Melvin*, its reliance on *Slawson* constitutes a stark reversal from past practice.

In any event, both *Slawson* and *Melvin* resulted in acquittals, thus precluding appellate review and leaving unresolved by any Circuit the contours of insider trading liability under Section 1348.

> **D.     The Government's Proposed 1348 Charge Is Not A Correct Statement Of The Law**

The government's proposed instruction should be rejected as an inaccurate statement of the law. As set forth below, the government's charge—which cherry picks from *Harris*, *Melvin*, and *Slawson*—conflates the two prongs of Section 1348, ignores the duty, breach, and personal benefit elements, confusingly defines property, and omits the requisite intent to harm.

As an initial matter, none of the Northern District of Georgia cases presented the radical instruction the government has offered here.

*First*, both *Harris* and *Melvin* laid out separately each prong of Section 1348 and were careful to distinguish between a "scheme or artifice to defraud," 18 U.S.C. § 1348(1), and a "scheme or artifice to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of" securities, 18 U.S.C. § 1348(1). The government's proposed charge here, however, conflates the two, thereby eliminating the requirement that the government prove a materially false or fraudulent misrepresentation.

*Second*, and more critically, *Melvin* did not omit, as the government proposes to do here, the duty or breach elements of insider trading liability. In *Slawson*, the court's ultimate Section 1348 instruction—which departed from the government's proposal—looked quite similar to typical misappropriation instructions under Title 15, although it did not expressly include duty, breach, or benefit language. *See* Tr. of Jury Charge at 10-16, *Slawson*, No. 14 Cr. 16, ECF No. 118. The jury was charged that, in order for the government to prove a "scheme to defraud" or "scheme or artifice to obtain money or property":

Hon. Gregory H. Woods
March 5, 2018
Page 12

> [Y]ou must find beyond a reasonable doubt that the Defendant knew that he was obtaining material nonpublic information from one or more [of] Carter's employees who were embezzling the information from Carter's *for their own use*, such as by sharing it with others so that they could trade on the basis of the information, and that the Defendant in some way knowingly and intentionally aided, counseled, commanded, induced, or procured that embezzlement.  To "embezzle" means to wrongfully take someone's property and spend it, transfer it, convert it to personal use, or convert it to someone else's use.

*Id.* at 12–13 (emphasis added).

The instruction in *Melvin* was similar to that in *Slawson*.  But the court in *Melvin* explicitly charged that the defendant tippee had to have knowledge that the tipper had "obtained and was in possession of material nonpublic information that [the tipper] had misappropriated from his client *for his own use* **and** *in breach of his duty of trust and confidentiality to his client*."  *See* Tr. of Jury Charge at 492, *Melvin*, No. 14 Cr.  22, (emphasis added).  As mentioned above, perhaps recognizing *Melvin*'s explicit duty and breach requirements, the government has conspicuously avoided relying on it here.  It is unclear why *Slawson* would be relevant to this case but not *Melvin*. In any event, neither charge supports the government's proposed instruction, which is *entirely* devoid of the required duty and breach elements of a fraudulent misappropriation.

*Third*, the government's proposed instruction impermissibly conflates "confidential information" with "material, non-public information."  While the government allows that the latter can constitute the former, it would permit the jury to convict Mr. Chow based on a finding that the information in question was publicly available and not material but still confidential.  It is black letter law, however, that information may be confidential even where it is neither material nor non-public, and that in such cases, there is no crime.  *See O'Hagan*, 521 U.S. at 651-52; *Dirks*, 463 U.S. at 646.  And instructions to that effect are routinely given in this District.  *See, e.g.*, Tr of Jury Charge at 3190-91, *Martoma*, No. 12 Cr. 973 (PGG) ("You should also be aware that confidential information is not necessarily the same as material, non-public information.  Information may be confidential that is neither material nor non-public. . . .  The government must prove beyond a reasonable doubt that [the insiders] disclosed material, non-public information -- not simply confidential information.").  Thus, this proposed instruction is in error.

*Finally*, it is well settled in this Circuit that Title 18 imposes an additional requirement that the government prove that the defendant actually intended harm to its victim.  *See United States v. Litvak*, 808 F.3d 160, 178 (2d Cir. 2015) (in the context of mail and wire fraud, "[o]nly a showing of intended harm will satisfy the element of fraudulent intent.") (quoting *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006)); *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015) ("the government must, at a minimum, prove that defendants contemplated some actual harm or injury to their victims.") (quoting *Novak*, 443 F.3d at 156)).  And courts within this District routinely given instructions to that effect.  *See, e.g.*, Tr. of Jury Charge at 1581-82, *United States v. Binday*,

Hon. Gregory H. Woods
March 5, 2018
Page 13

12 Cr. 152 (CM), ECF 282.  This critical element is entirely missing from the government's proposed charge.

 While this Court is writing on a blank slate, it need not reinvent the wheel.  Lawful instructions would comport with the elements required under Sections 10(b) and the wire fraud statute, as do Mr. Chow's proposed instructions for Count Fourteen.  To the extent this Court decides to give an entirely separate charge for Count Fourteen, we respectfully request that it reflect the well-established principles for establishing liability in misappropriation cases and the additional elements, including intent to harm, specifically required by Section 1348.

     Respectfully submitted,


     /s/_____
     George S. Canellos
     Katherine R. Goldstein
     Adam Fee

cc: AUSA Elisha Kobre (via ECF)
   AUSA Scott Hartman (via ECF)
   AUSA Max Nicholas (via ECF)